ISAIAH T. WILLIAMS et al., Respondents, *v.* LOREN INGERSOLL et al., Appellants.

The plaintiffs, who were attorneys and counselors, were employed in one or the other capacity by defendant H. in various suits and legal proceedings between him and defendants L. & J. H. Ingersoll; one was an action for malicious prosecution brought by him during the progress of the litigations. H. made an oral agreement with plaintiffs that they should be paid for their services out of any moneys he should obtain or become entitled to from any of the suits or proceedings, and " should have a lien for all sums that might be owing or due them for their said services and for the services of each of them," which lien should be superior to any right he might have. All of these actions and proceedings were finally, by agreement of the parties, submitted to an arbitrator, who among other things awarded to H. $10,000 as damages for the malicious prosecution. In an action to enforce their alleged claim and lien upon the award, wherein the value of plaintiffs' services was found to be more than the amount thereof, *held*, that the agreement operated as an equitable assignment, which attached to the award as soon as it was made, and was good against H. or any attaching creditor,

and this, although it was for damages on account of a personal tort ; that it was not needful in order to make such assignment or lien valid and effectual that notice thereof should have been given to the debtors.

*People. ex rel. Stanton,* v. *Tioga C. P.* (19 Wend. 73), distinguished.

*It seems* that such notice would have been necessary only to defeat a subsequent *bona fide* payment by the debtors.

*Watts* v. *Porter* (3 E. & B. 743), stated to have been overruled.

Before the said award was made, defendant B. recovered a judgment in this State against H. which was assigned to defendant Ivins. Two days before the time fixed by the award for the payment of the $10,000 Ivins brought an action in Connecticut against H. upon the judgment, an attachment was issued therein which was served in that State on L. Ingersoll who then resided therein, and the sheriff returned the writ with his indorsement that L. Ingersoll disclosed an indebtedness on the part of the garnishees to H. of $10,000. The Ingersolls had no notice of the lien of plaintiffs upon the award, until after service of the attachment. Ivins, after the commencement of this action, recovered judgment in the Connecticut action, and after return of execution unsatisfied, a *scire facias* was issued according to the law and practice of that State against the Ingersolls, to compel payment by them of the amount of the judgment ; they appeared in answer thereto and informed the court of plaintiffs' claim : it ordered notice to be given to plaintiffs of the attachment proceedings. Plaintiffs did not appear, and the *scire facias* is still pending. Prior to the commencement of this action, L. Ingersoll had removed to this State, and all the other parties were then, and at the time the attachment was served, residents therein. *Held,* that the debt created by the award had its *situs* in this State and so was not affected by the attachment; also that, as at the time of the service thereof the debt did not belong to H., nothing was attached, and as to plaintiffs the attachment was a nullity.

*It seems* that the judgment herein may be used to defeat the Connecticut attachment.

But *held,* that the Ingersolls, if they desire, might have, as part of the judgment herein, an injunction restraining Ivins from proceeding further in the foreign jurisdiction.

No greater force or efficacy will be given to a foreign than to a domestic attachment.

By the award H. was found indebted to various parties connected with the litigation in specified sums, and among them to J. H. Ingersoll. It was claimed, on behalf of the Ingersolls, that these items should be allowed as offsets. *Held* untenable, as the items were not payable to the two Ingersolls, who owe the amount of the award claimed, and as provision was made for their payment by deduction from another sum due H. to be ascertained as prescribed by the award.

*It seems* that plaintiffs could claim no general lien, as attorneys, upon the award.

Statement of case.

*It seems* also that plaintiffs could not base their claim to an equitable lien upon the mere promise of H. that they should be paid out of any moneys recovered.

An agreement, either oral or in writing, to pay a debt out of a designated fund does not give an equitable lien upon the fund or operate as an equitable assignment.

(Argued May 2, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 14, 1880, which affirmed a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term. (Mem. of decision below, 23 Hun, 284.)

The nature of the action and the material facts are stated in the opinion.

*Joseph H. Choate* for appellants Ingersolls. The portion of the award giving Heath $10,000 damages in suit No. 29 is inseparable from, and dependent and conditional upon, the complete performance by Heath of all the things required of him by the award. (*Huy* v. *Brown,* 12 Wend. 591; *McNeil* v. *McGee,* 5 Mason, 244; *Shearer* v *Handy,* 22 Pick. 417; *Matthews* v. *Matthews,* 2 Curtis' C. C. 105; *Grant* v. *Johnson,* 5 N. Y. 247; *Farmers' Loan and Trust Co.* v. *Hunt,* 16 Barb. 514; *Selden* v. *Pringle,* 17 id. 458; *Lester* v. *Jewett,* 11 N. Y. 453; *Cole* v. *Blunt,* 2 Bosw. 116.) If Heath had attempted to assign this claim to the plaintiffs prior to the award, the assignment would have been a nullity and void, because the subject thereof was a claim for damages for a personal tort. (*People* v. *Tioga C. P.,* 19 Wend. 73; *Hodgman* v. *Western R. R. Corporation,* 7 How. Pr. 492; *Pulver* v. *Harris,* 52 N. Y. 73; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.,* 71 id. 443.) If the claim of Heath for the damages were capable of legal or equitable assignment, or of an assignment which would attach to the judgment when recovered, so as to give an equitable interest therein, what passed between Heath and the plaintiffs was not sufficient to make out such an equitable assignment. (Code of Civil Procedure, § 499; *Rogers* v. *Ho-*

*sack's Exrs.*, 18 Wend. 319; *Dickerson* v. *Phillips*, 1 Barb. 454; *Gibson* v. *Stone*, 43 id. 285; *McEwen* v. *Brewster*, 17 Hun, 223; *Hoyt* v. *Story*, 3 Barb. 264; *Christmas* v. *Russell*, 14 Wall. 69; *Trist* v. *Child*, 21 id. 447; *Hutter* v. *Ellwanger*, 4 Lans. 8; *Vreeland* v. *Blunt*, 6 Barb. 182; *Shaver* v. *W. U. Tel. Co.*, 57 N. Y. 459; *Wright* v. *Ellison*, 1 Wall. 16; *Brown* v. *Mayor*, 11 Hun, 21; *Rooney* v. *Second Ave. R. R.*, 18 N. Y. 368; *Chase* v. *Peck*, 21 id. 581; *Payne* v. *Wilson*, 74 id. 348.) At the time of the levy of the attachment of Ivins, the supposed rights of the plaintiffs being entirely secret and unknown to either the Ingersolls, or the attaching creditor, Ivins, by his attachment, secured a lien upon the fund prior in law and equity to any claim of the plaintiffs. (*Bayley* v. *Greenleaf*, 7 Wheat. 46; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *McFarland* v. *Wheeler*, 26 Wend. 467; *Wood* v. *Partridge*, 11 Mass. 488; *Phillips* v. *Stagg*, 2 Edw. 108; *Redfearn* v. *Ferrier*, 1 Dow. 50; *Murray* v. *Lyeburn*, 2 Johns. Ch. 441, 443; *Livingston* v. *Dean*, id. 479, 480; *Black* v. *Zacharie*, 3 How. [U. S.] 483, 512, 514; *People* v. *Tioga C. P.*, 19 Wend. 75; *Fisher* v. *Prest.*, etc., *Essex Bk.*, 1 Am. Ry. Cas. 127; *Parks* v. *Innes*, 33 Barb. 37; Story's Eq. Jur. 421*b*, 1035*a*; *Foster* v. *Blackstone*, 1 M. & K. 297; Affd. H. of Lords, 9 Bligh, 332; *Timson* v. *Ramsbottom*, 2 Keen, 35; *Stuart* v. *Cockerell*, L. R., 8 Eq. 607; *In re Russell's Policy Trusts*, L. R., 15 Eq. 26; *Dearle* v. *Hall*, 3 Russell, 1; *Loveridge* v. *Cooper*, id. 30; *Foster* v. *Cockerell*, 9 Bligh, 332, 375.) The court in Connecticut having, by the attachment, levied upon the fund before the commencement of this suit, or the service of the notice upon which it is based, had full jurisdiction to determine the question at issue between the parties in respect to the *res* attached. (Wharton on Confl. of Laws, § 787; *Philips* v. *Hunter*, 2 H. Bl. 402; *McDaniel* v. *Hughes*, 3 East, 367; *Embree* v. *Hanna*, 5 Johns. 101; *Holmes* v. *Remsen*, 4 Johns. Ch. 460; 20 Johns. 229; 2 Pars. on Cont. 607; *Wheeler* v. *Raymond*, 8 Cow. 311.) Where arbitrators transcend their authority, their award *pro tanto* will be void; but if that which is void affects not

the merits of the submission, the residue will be valid. (*Mc-Bride* v. *Hagan*, 1 Wend. 327; *Mayor, etc.,* v. *Butler*, 1 Barb. 333; *Beckwith* v. *Warley*, Rolle's Abr. Arb. H. 9, 250; *Skillings* v. *Coolidge*, 14 Mass. 43; *Cox* v. *Jagger*, 2 Cow. 625.) An award will be construed so as to sustain it if possible. (Morse on Arbitration, 438; 2 Pars. on Cont. 692–696; Story's Eq. Jur., § 64*e; Sturges* v. *Champneys*, 5 M. & C. 97; *Smith* v. *Felton*, 43 N. Y. 424; Story's Eq., § 1437*b*.)

*Samuel Hand* for appellants Brady and Ivins. The alleged agreement between Heath and the plaintiffs being secret and suspicious in its character and circumstances, was against public policy and should not be enforced in equity. (*Bayley* v. *Greenleaf*, 7 Wheat. 46; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *McFarland* v. *Wheeler*, 26 Wend. 467; *Moore* v. *Holcombe*, 3 Leigh, 601.) An agent or attorney does not acquire a lien on a fund by meritorious services and outlays expended in creating it. (*Pulver* v. *Harris*, 52 N. Y. 73; *Wright* v. *Ellison*, 1 Wall. 16; *Trist* v. *Child*, 21 id. 441.) No matter what may be the intent of the parties an attempt to assign moneys will not be effectual unless the particular fund from which they are to be paid is distinctly specified and identified in the agreement. (*Hutter* v. *Ellwanger*, 4 Lans. 8; *Vreeland* v. *Blunt*, 6 Barb. 182; *Shaver* v. *W. U. Tel. Co.*, 57 N. Y. 459; *Watson* v. *Duke of Wellington*, 1 R. & M. 601.) There can be no equitable lien for services established where the amount thereof is not fixed. (*Wright* v. *Ellison*, 1 Wall. 16.) An agreement to pay a creditor out of a particular fund does not constitute an assignment of or give the creditor a specific lien upon the fund. (*Rogers* v. *Hoosack's Exrs.*, 18 Wend. 319; *Hoyt* v. *Story*, 3 Barb. 262; *Gibson* v. *Stone*, 43 id. 285; *Brainerd* v. *Burton*, 5 Vt. 97; *Christmas* v. *Griswold*, 8 Ohio St. 558; *Eib* v. *Martin*, 5 Leigh [Va.], 132; *Christmas* v. *Russell*, 14 Wall. 69; *McEwen* v. *Brewster*, 17 Hun, 223; *Ex parte Tremont Nail Co.*, 16 B'k'cy Reg. 448; Dickerson, Sr., 345.) The rule is the same even where the debtor has publicly signified his intention of so

appropriating the fund as by drawing an order in writing. . (*Dickerson* v. *Phillips*, 1 Barb. 454 ; *Tyler* v. *Gould*, 48 N. Y. 683 ; *Clayton* v. *Fawcett*, 2 Leigh, 19.) Where the owner of a chose in action does not irrevocably part with all his rights against his debtor, there is no assignment. (*Rogers* v. *Hoosac's Exrs.*, 18 Wend. 319 ; *Hoyt* v. *Story*, 3 Barb. 262 ; *Rupp* v. *Blanchard*, 34 id. 627 ; *Gibson* v. *Stone*, 43 id. 291 ; *Christmas* v *Russell*, 14 Wall. 69 ; *Trist* v. *Child*, 51 id. 447.) Assuming the alleged agreement between Heath and the plaintiffs to have been valid, still it was ineffectual to create any equities superior to the claims of these attaching creditors for want of notice to them or to the debtor Ingersoll, and because it was a mere executory contract. (*Bishop* v. *Holcomb*, 10 Conn. 446 ; Story's Conflict of Laws, § 400*a*; *Park* v. *Inness*, 33 Barb. 37 ; *People* v. *Tioga C. P.*, 19 Wend. 75 ; *Murray* v. *Leyburn*, 2 Johns. Ch. 441, 443 ; *Livingston* v. *Dean*, id. 479, 480 ; *Thompson* v. *Van Vechten*, 27 N. Y. 568 ; *Black* v. *Zacharie*, 3 How. [U. S.] 483, 512, 514 ; *Moore* v. *Gravelot*, 3 Brad. [Ill.] 457 ; *Dearle* v. *Hall*, 3 Russell, 1 ; *Loveridge* v. *Cooper*, id. 30 ; *Fisher* v. *Prest. Essex Bk.*, 1 Am. Ry. Cas. 127 ; *Coughlin* v. *N. Y. C. & H. R. R. R.*, 71 N. Y. 450 ; *Brainerd* v. *Burton*, 5 Vt. 97 ; *Mogg* v. *Baker*, 3 M. & W. 195 ; *Moody* v. *Wright*, 13 Metc. 17, 31 ; *Stearns* v. *Quincy*, 124 Mass. 31 ; *White* v. *Coleman*, 127 id. 34 ; *Fisk* v. *Potter*, 2 Keyes, 64, 75.) The rule that an assignee or an attaching creditor takes subject to all equities against the thing he thus obtains is to be interpreted as referring to equities in favor of the debtor or attaching to the thing and not to equities in favor of third persons. (*Redfearn* v. *Ferrier*, 1 Dow. 50, 68 ; *Murray* v. *Lylburn*, 2 Johns. Ch. 441, 443; *Livingston* v. *Dean*, id. 479, 480; *Moore* v. *Holcombe*, 3 Leigh, 597, 602 ; *White's Heirs* v. *Prentiss' Heirs*, 3 Monr. [Ky.] 510 ; *People's Bk.* v. *Gridley*, 91 Ill. 457.) Whatever equitable lien the plaintiffs may have originally obtained was lost and surrendered by them on the submission to arbitration and was never recovered. (*Lorillard* v. *P. & N. Y. M. S. M. Co.*, N. Y. Daily Reg., Dec. 17, 1878 , *Coit* v. *Fougera*, 36 Barb. 198 ; *Legg* v. *Willard*, 17 Pick.

140; *Trist* v. *Puirsson*, 1 Hilt. 292; *Judson* v. *Corcoran*, 17 How. [U. S.] 612; *McFarland* v. *Wheeler*, 26 Wend. 467; *Bevan* v. *Waters*, 3 C. & P. 520.) No contract between Heath and the plaintiffs jointly being established by the evidence, there is therefore such a failure of proof as entitles the defendants to judgment. (*Esterbrook* v. *Messersmith*, 18 Wis. 545; *Masters* v. *Freeman*, 17 Ohio St. 323; *Liffered* v. *Edwards*, 39 Ind. 165, 170; *Calkins* v. *Smith*, 48 N. Y. 614, 619.) The alleged assignment to the plaintiffs was void because the subject thereof was a claim for damages by Heath for a personal tort. (*Hodgman* v. *W. R. R. Co.*, 7 How. 492; *Pulver* v. *Harris*, 52 N. Y. 73; *People* v. *Tioga C. P.*, 19 Wend. 73; *Coughlin* v. *N. Y. C. & H. R. R. R. Co.*, 71 N. Y. 443.) The attachment proceedings in Connecticut were proceedings *in rem*, and conclusive everywhere. (*Green* v. *Van Buskirk*, 7 Wall. 139; Story on the Constitution, § 1313; Story on Conflict of Laws, §§ 592*a*, 549; *Cooper* v. *Reynolds*, 10 Wall. 308, 317; *Embree* v. *Hanna*, 5 Johns. 103; *Monroe* v. *Douglas*, 4 Sandf. Ch. 126; *Starbach* v. *Murray*, 5 Wend. 148; *Bradstreet* v. *Neptune Ins. Co.*, 3 Sumn. 600; *Holmes* v. *Remsen*, 20 Johns. 229.) The plea of the attachment in Connecticut was a sufficient plea in abatement. (*Embree* v. *Hanna*, 5 Johns. 100.)

*I. T. Williams* for respondents. It was not necessary in order to effect a valid equitable lien upon or assignment of the fund in question, that it should then be in existence. (Story's Eq. Jur., §§ 1040, 1047, 1055; *Morton* v. *Naylor*, 1 Hill, 583; *Cromwell* v. *The Brooklyn F. Ins. Co.*, 39 Barb. 227; 44 N. Y. 72.) It does not matter that the cause of action out of which the fund arose was not assignable. (*People* v. *Tioga C. P.*, 19 Wend. 72.) Nor is it material that the amount is not liquidated. (*Ward* v. *Syne*, 9 How. 25; *Rooney* v. *Second Ave. R. R. Co.*, 18 N. Y. 368.) It is immaterial whether the defendants had knowledge of this lien or assignment. (2 Story's Eq. Jur. [10th ed.], §§ 1040, *b*. 1044, 1057; *Carr* v *Hilton*, 1 Curtis' C. C. 390.) Nor is it material that the assignment was an assignment of a prospective fund

which might result from a litigation, whatever it might be. It was not void for champerty or maintenance. (*Thallhimer* v. *Brinckerhoff*, 3 Cow. 623; 3 Ring. 309; Young & Jerv. 129; 2 Story's Eq. Jur., § 1040; *Findon* v. *Parker*, 11 M. & W. 675–682; Story's Eq. Jur., § 1050; R. S. [6th ed.] 970; *Voorhees* v. *Dorr*, 51 Barb. 580; *Dungin* v. *Ireland*, 14 N. Y. 322; *Benedict* v. *Stewart*, 22 Barb. 420; *Fogerty* v. *Jordan*, 2 Robt. 319; 7 Wait's Actions and Defenses, 78; *Sedgwick* v. *Staunton*, 14 N. Y. 289; *Zogbaum* v. *Parker*, 66 Barb. 341; *S. C.* affirmed, 55 N. Y. 120.)

EARL, J. The plaintiffs were attorneys and counselors at law, practicing their profession in the city of New York. During several years before the commencement of this action the defendant Heath was extensively involved in litigation with the defendants Ingersoll and with other parties. He became a party to many legal proceedings and actions in all of which one of the plaintiffs was either his attorney or counsel. One of the actions was brought by Heath against the Ingersolls to recover damages for malicious prosecution. All the proceedings and actions were finally, by agreement of all the parties, submitted to an arbitrator, who after hearing all the parties made his award in and by which, among other things, he awarded to Heath against the Ingersolls for damages on account of the malicious prosecution the sum of $10,000. During the progress of the litigation, the plaintiffs, feeling uneasy about their compensation for the services which they were rendering, and were expected to render for Heath in the various actions, made an oral agreement with him, which is alleged in the complaint, and found by the trial judge as follows: " That the plaintiffs should be paid for their said services out of any moneys that the said Heath should obtain or become entitled to from any of the matters, suits and proceedings in which they should be engaged;" and that they " should have a lien for all sums that might be owing or due them for their said services, and for the services of each of them, and for the services of the attorneys employed by them to the extent of the worth and value thereof

upon any sum he might obtain or become entitled to from the said defendants Lorin and James H. Ingersoll, or from any other person or party connected with said suits, matters and proceedings superior to any right the said Heath might have thereto, and which should be paid to them before the said Heath should have or be entitled to receive any part thereof, or right thereto."

Before the award which has been referred to was made, the defendant Brady recovered a judgment in the Supreme Court of this State against Heath for upwards of $7,000, and that judgment was assigned to the defendant Ivins. On the 28th day of October, 1878, two days before the time fixed by the award for the payment of the $10,000 to Heath, Ivins brought an action in the Supreme Court of Connecticut, in Middlesex county, against Heath upon the judgment recovered against him by Brady, and on the same day sued out an attachment thereon, and the sheriff of Middlesex county immediately served the attachment on Lorin Ingersoll, at Portland in Connecticut, where he then resided; and returned the writ with his indorsement thereon that Lorin Ingersoll disclosed an indebtedness on the part of the garnishees to Heath of $10,000. The Ingersolls did not have any knowledge or notice of the lien of the plaintiffs upon the award until after the attachment was served.

On February 18, 1879, Ivins recovered judgment in his action against Heath for upwards of $8,000, and on the 17th day of March, execution was issued on the judgment to the sheriff of Middlesex county, and by him was returned unsatisfied. A *scire facias* was thereupon issued out of the Connecticut court according to the law and practice of that State against the Ingersolls to compel them to pay the amount of the judgment. On the 23d day of April, 1878, the Ingersolls appeared in the Connecticut court in answer to the *scire facias*, and informed that court of the claim of the plaintiffs upon the award.

The court then ordered notice to be given to the plaintiffs of the attachment proceedings that they might appear before it, and substantiate their claim if they saw fit according to the

laws of that State, which fully provide for the trial of rival claims to a garnisheed fund. That notice was duly given to the plaintiffs, but they did not appear, and the *scire facias* is still pending there, and the attachment is still in full force and effect in that State.

This action was commenced on the 16th day of January, 1879, before the recovery in Connecticut of the judgment by Ivins against Heath, and before any thing had been done in the attachment proceeding except the service of the attachment. The plaintiffs claim that the whole amount of the award was due and payable to them by virtue of their agreement with Heath, and this action was brought to enforce their claim to and lien upon the award, and to foreclose and cut off any claim thereon which the defendants Brady and Ivins might have.

It is denied by the defendants, except Heath who suffered default, that the plaintiffs by virtue of any agreement with Heath have any claim to or upon the award which is superior to the claim or lien obtained by Ivins by virtue of the Connecticut attachment proceedings, and this presents the first question for our determination.

There are several obvious reasons for holding that the plaintiffs cannot base their right to recover in this action upon any general lien upon the award which the law gave them as attorneys in the various actions and proceedings which were submitted to the arbitrator. Such a lien would not be a joint lien, and an attorney's lien is confined to the judgment in the very action in which the compensation was earned for which the lien is claimed. (*Phillips* v. *Stagg*, 2 Edw. Ch. 108; *St. John* v. *Diefendorf*, 12 Wend. 261; *Adams* v. *Fox*, 40 Barb. 442.) The theory upon which the lien is upheld is that the attorney has, by his skill and labor, obtained the judgment, and that hence he should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures. When, therefore, an attorney has several actions, and recovers judgment in but one of them, he cannot, in the absence of a special agreement, have a lien upon that judgment for his compensation in all the actions.

Nor can the plaintiffs base their claim to an equitable lien upon the award upon the mere promise of Heath that they should be paid out of any money that should be recovered in any of the actions or proceedings. ' Whatever the law may be elsewhere, it must be regarded as the settled law of this State that an agreement, either by parol or in writing, to pay a debt out of a designated fund does not give an equitable lien upon the fund, or operate as an equitable assignment thereof.) It was so decided in *Rogers* v. *Hosack's Executors* (18 Wend. 319.) That case was followed, and the same rule laid down, in *Christmas* v. *Russell* (14 Wall. 69), and *Trist* v. *Child* (21 id. 441).

It is contended by the defendants that at the time of the alleged agreement between the plaintiffs and Heath, the claim of the latter which resulted in the award for the $10,000, was for damages on account of a personal tort, and that, therefore, he could not, at that time, assign or create a lien upon the sum which should be subsequently recovered or awarded; and our attention is called to the case of *People ex rel. Stanton* v. *Tioga C. P.* (19 Wend. 73), as an authority for the contention. At law, there could be no assignment of the damages, because they were for a personal tort, and the assignment could not take effect upon the award, because that had no existence at the time. But it is otherwise in equity. Story, in his Equity Jurisprudence, in section 1040, says: "Courts of equity will support assignments, not only of choses in action, and of contingent interests and expectancies, but also of things which have no present, actual or potential existence, but rest in mere possibility; not, indeed, as a present, positive transfer, operative *in presenti*, for that can only be of a thing *in esse*, but as a present contract, to take effect and attach as soon as the thing comes *in esse*. Thus, for example, the assignment of the head-matter and whale-oil to be caught in a whaling voyage now in progress will be valid in equity, and will attach to the head-matter and oil when obtained." And so, even the assignment of freight to be earned in the future is good in equity, and will be enforced against the party from whom it becomes due. It is said

that such assignments always operate by way of agreements or contracts amounting in the consideration of the court to this, that one agrees with another to transfer and make good that right or interest, and like any other agreement, the court will cause it to be specifically performed (not leaving the assignor to his action for damages) when the assignor is in a condition to transfer the thing assigned or causes it to be transferred. (2 Lead. Cas. in Eq. with Hare & Wallace's notes, 204.) Every assignment of a chose in action is merely an executory contract which equity considers as executed, and which the law following equity regards as conferring certain rights which the assignor is bound to respect. If a contract to assign be good in itself and not inconsistent with public policy, it will take effect as an equitable assignment. These views are abundantly sustained by authority; and it cannot be preceived why they do not apply to such a case as this. This agreement was not in violation of any public policy, and it has no features which condemn it in equity. The plaintiffs were not to prosecute the actions upon shares, and their compensation was not contingent upon success. The assignment here could not even in equity operate upon the unliquidated claim for damages on account of the personal tort, but attached to the award the moment it was made. The damages had been suffered. An action had been commenced for their recovery, and hence the award had a potential existence and was not ever a mere possibility. In *People ex rel. Stanton* v. *Tioga Common Pleas* it was decided that a chose in action for a tort merely personal is not assignable so that a court of law will protect the assignee against a subsequent fraudulent discharge of the damages recovered in a suit prosecuted for such tort, although the tort-feasor accepted the discharge with full knowledge of the assignment; but that the remedy of the assignee is by action against the assignor for breach of his express or implied undertaking not to do any thing in the matter to prejudice the assignee. The adjudication was that the assignment was invalid in a court of law, and whether it could have any operation in equity upon the judgment recovered was not involved or decided in that case, although Judge COWEN in his

opinion remarked that "neither law nor equity will recognize such a transfer." If by this remark the learned judge meant that neither law nor equity would recognize such a transfer as operating upon the unliquidated damages for the tort, he was right. But if he meant that equity would not recognize such a transfer as attaching to the judgment recovered for the damages, he fell into error and his remark was unsupported by reason or authority. The court there held that the contract of assignment was so far valid as to impose a liability upon the assignor for its breach; that while the assignee could not enforce any right under the assignment against the tort-feasor, the debtor, he could yet have a remedy just as broad against the assignor for a breach of the agreement. It would seem to be reasonably clear that if such an assignment would be so far binding upon the assignor as to make him liable for defeating its operation, it should be binding upon the debtor after he has notice of it, and after the recovery of judgment. But if the court was there right in holding that the assignee has a remedy in such a case against the assignor for defeating the assignment by releasing the assigned claim, then in a case like this in equity with all the parties in court, the assignor consenting by his default, and the fund being still in the hands of the debtors, there can be no reason for defeating the claim of the plaintiffs to recover the fund. As between them and the assignor the fund in good conscience and equity belongs to them, and if the assignor received it he would be under obligation to pay it to them, and we can perceive no reason why equity should not therefore give it to them. We are not confronted with the difficulty which might exist if the Ingersolls had paid the amount of the award to Heath or to Heath's attaching creditors even with knowledge of the assignment. The fund is yet in their hands. The assignor is yet willing that they should pay it to the plaintiffs, and why should they not be compelled to? We can perceive no reason save such as grows out of the attachment proceedings of which we will speak further on.

We therefore hold that there is no difficulty in this equitable action growing out of the fact that the award was for damages

on account of a personal tort; and a further authority for this conclusion is found in *Patten* v. *Wilson* (34 Penn. St. 299), where it was held that an agreement by parol between attorney and client that the former should have $100 for his services " out of the verdict" in an action for unliquidated damages arising from a personal tort operated as an equitable assignment of the judgment entered upon the verdict, and was good against an attaching creditor of the client.

It matters not that the agreement upon which the plaintiffs rely was by parol and not in writing. The agreement was founded upon an adequate consideration and is just as valid and effectual as if made in writing. (*Risley* v. *Phenix Bank*, 83 N. Y. 318–328, 38 Am. Rep. 421.) Not only can a chose in action be assigned by parol, but a lien upon it can be created by parol. It is not important to inquire here whether the agreement proved by the plaintiffs was an agreement to assign or an agreement for a lien upon any sum which might be recovered, for either agreement would have the same effect, as the plaintiffs' claim is for the full amount of the award. The agreement was not alone that the plaintiffs should be paid out of any sum recovered. Such an agreement, as I have above shown, would not have been sufficient to give the plaintiffs any claim upon the award. But there was also proof tending to show that it was the intention to assign to the plaintiffs or to give them a lien upon any sum recovered and that plaintiffs were to receive the sum recovered and retain out of it their compensation, and to pay the balance if any, to Heath; and for the purpose of upholding the judgment we may assume that the trial judge found any facts which the evidence tended to establish. The form of words used in making the agreement is not alone to receive attention, but all the circumstances of the transaction are to be considered. It is a rule in equity that any thing which shows an intention to assign on the one side and from which an assent to receive may be inferred on the other will operate as an assignment if sustained by a sufficient consideration.

It is strenuously contended that there is no proof justifying

the finding that the agreement of Heath was made with the plaintiffs jointly. While the evidence upon this point is quite meagre and unsatisfactory, yet there is enough to justify the finding of a joint agreement.

It was not needful to make the assignment or lien valid and effectual against Heath and against his attaching creditors, that notice thereof should have been given to the debtors, the Ingersolls. Such notice was needful only to defeat a subsequent *bona fide* payment by the Ingersolls. It has been held in some of the States and was formerly supposed to be the rule in England, that such an assignment could be valid and operative only in case of and after notice to the debtors. It was held in *Watts* v. *Porter* (3 E. & B. 743), that an assignment of a mere chose in action without notice to the debtor was inoperative as against a subsequent judgment creditor. But the lord chancellor and Lords Justices KNIGHT, BRUCE and TURNER in *Beavan* v. *Earl of Oxford* (6 De G. M. & G. 492), and the master of the rolls in *Kinderley* v. *Jervis* (22 Beav. 1), held a contrary doctrine, and in *Pickering* v. *The Ilfracombe Railway Co.* (L. R., 3 C. P. 235), BOVILL, Ch. J., and WILLES, J., agreed with the latter authorities. Still later, in *Robinson* v. *Nesbitt* (L. R., 3 C. P. 264), the case of *Watts* v. *Porter* was directly overruled, and it was held that a prior equitable assignment of railway shares in the hands of a garnishee was a bar to an attachment, nowithstanding that no notice of such assignment had been given to the garnishee. In *Stevens* v. *Stevens* (1 Ashmead, 190), it was held that the assignment of a debt due by a third person was a good equitable transfer of such a debt as against a subsequent attaching creditor, notwithstanding no notice of such assignment was given to the debtor until after the attachment. In *United States* v. *Vaughan* (3 Binney, 394), a similar decision was made, and it was further held that the plaintiff in a foreign attachment stands upon no better footing as to the thing attached than his debtor, the defendant, in the attachment. In *Dix* v. *Cobb* (4 Mass. 508), PARSONS, C. J., said : " Although the trustee in this case had no notice of the assignment until after he was sued as trustee, yet imme-

diately on the assignment the equitable interest in the debt as between the parties to it immediately passed to the assignee. And if the assignor had afterward recovered the debt, he would be obliged to pay it over to the assignee. But an attaching creditor cannot stand on a better footing than his debtor (if the assignment be not fraudulent as to creditors), and if he attaches any property of his debtor, it must be attached subject to all lawfully existing liens created by his debtor. And consequently if his debtor have no equitable interest in a *chose in action,* the creditor cannot acquire any by his attachment." In *Muir* v. *Schenck* (3 Hill, 228), it was held that as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, though he have given no notice to either the subsequent assignees or the debtor, and the question between a previous assignee and a subsequent attaching creditor was considered the same in principle as that between conflicting assignees. However much that case may have been criticized elsewhere it has been considered well decided in this State. It was cited with approval in *Greentree* v. *Rosenstock* (61 N. Y. 583), and *Freund* v. *The Imp. & Tr. Nat. Bank* (76 id. 352).

We must, therefore, hold that the plaintiffs had an assignment of or lien upon the award, good and effectual against the assignor Heath, and his attaching creditor.

We must now consider the effect of the attachment proceeding in Connecticut. At the time the attachment was served, none of the parties concerned, so far as appears, resided in that State but Lorin Ingersoll. All the other parties, the plaintiffs, James H. Ingersoll, Heath, Brady and Ivins, resided, as we must infer, in this State. The award was made in this State, and was at that time held in this State, and hence the debt in no sense had its *situs* in that State. A debt always under general jurisprudence has its *situs* either at the domicile of the creditor or where the written obligation upon which it is due is held, and not at the *situs* of the debtor. Hence under general public law, recognized by all courts, there was nothing in Connecticut to attach. But local laws may fix

the *situs* of the debt at the domicile of the debtor, and under such laws it may be effectually attached against a non-resident creditor, and compulsory payment under the attachment will protect the debtor everywhere against a suit for the recovery of the same debt by the creditor. The law seems to be thus settled for the reason that it would be unjust to compel the debtor to pay his debt twice. (*Embree* v. *Hanna*, 5 Johns. 101.)

Here the Ingersolls have not paid the debt under the attachment, and when this suit was commenced the attachment had simply been served, and the attachment proceeding is still pending. But in *Embree* v. *Hanna* it was held that a pending attachment proceeding, under which a debt had been attached by service of the attachment upon the debtor in Maryland, could be pleaded in abatement to an action brought here by the creditors against the debtor for the recovery of the same debt, and the reason of the holding was that the debtor might be compelled to pay twice. The reason of that decision does not apply to this case. Here before the Ingersolls had been compelled to pay, Lorin became a resident of this State, and all the parties at the time of the commencement of this action were residents of this State, and they are all parties to this action. Hence, there is no danger of a compulsory double payment. The judgment in this action can be used in Connecticut to defeat the attachment proceeding; that is, the court in that State, when it is brought to its attention, will undoubtedly respect it and give the garnishees the protection which it affords. And still further, if the Ingersolls desire it, they may now have, as part of the judgment in this equitable action, an injunction restraining the defendant Ivins from proceeding further in the foreign jurisdiction to enforce payment against them. They could probably, on the footing of the judgment in this action, apply at any future time for such an injunction, and as Ivins is within the jurisdiction of the court there can be no difficulty in making the injunction effectual for the perfect protection of the garnishees.

Under such circumstances, it would be a very poor administration of justice which would turn the parties, all residents of

this State, out of our courts and send them to a foreign juris-
diction to litigate the matters in controversy between them and
there are no authorities requiring that it should be done.    But
there is still a further reason for not applying in this case the
rule laid down in *Embree* v. *Hanna*.    At the time the attach-
ment was served in Connecticut, the debt did not belong to
Heath, the attachment debtor.    As I have shown, he had made
an assignment of it effectual against him, and against his
attachment creditors.    He had nothing, really or constructively,
in that State, to be attached, and as to these plaintiffs the
attachment there was a mere nullity.    It is believed that no
case can be found which holds, that when the property of A. is
seized in a foreign State under an attachment issued against
the property of B., at the instance of the creditors of B., A. is
bound to appear in the foreign jurisdiction and assert his title
to the property.    Such an attachment proceeding would be
ineffectual to transfer or change the title to the property.
(Story on Conflict of Laws, § 592*a*, note 2.)

If the attachment at the suit of Ivins had been issued in
this State, this debt could not have been attached as the debt
of Heath, provided notice of plaintiffs' claim had been given
to the Ingersolls at any time before payment by them under
the attachment, or, perhaps, before their absolute liability to
pay under the attachment had been fixed.    In this State, the
seizure of the property of A., under an attachment issued
against B., would be wholly ineffectual, and shall a foreign
attachment have greater force than a domestic attachment?
These views are, I think, fully sanctioned by the case of *Os-
good* v. *Maguire* (61 N. Y. 524).

The award required Heath to make a certain assignment, to
discontinue certain suits, and to execute certain releases, and
the defendants Ingersoll claim that he did not do these things,
and hence, that the plaintiffs are not in a condition to compel
performance of the award on their part.    The proof tended to
show, and the trial-judge must have found that the assignments,
discontinuances and releases were tendered on the day fixed for
the performance of the award.    The plaintiffs' counsel, on the

argument, furnished us papers showing that the assignment, discontinuances and releases had been executed and accepted by the Ingersolls. This is, however, somewhat controverted on the part of the Ingersolls. If they have not been executed and delivered, as required by the award, provision can be made if desired by the Ingersolls, in the judgment of this court that the award in that respect shall be complied with before they shall be required to pay the amount awarded against them

By the award Heath was found indebted to " The Heath and Smith Manufacturing Company" in three small sums, amounting to upwards of $500; to Theodore P. Austin in two sums, amounting to upwards of $1,800, and to James H. Ingersoll in the sum of $1,500, and the claim is made on behalf of the Ingersolls that some, or all, of these items should be allowed to them as offsets against the sum claimed of them by the plaintiffs. It is a sufficient answer to this claim that these items were not due and payable to the two Ingersolls, who owe the amount of the award claimed by the plaintiffs, and that provision is made in the award that these items should be paid by deducting them not from the $10,000 awarded to Heath, but from another sum due Heath, the amount of which was to be ascertained in the manner prescribed by the award.

I have now given attention to all the points made by the appellants against the judgment appealed from, and the result is that the judgment should be generally affirmed unless the Ingersolls desire some provision inserted therein giving them an injunction restraining the further prosecution of the attachment proceedings in Connecticut, and also a provision in reference to the performance of the award on the part of Heath, as above indicated, in which case application may be made for the settlement of our judgment.

All concur, except MILLER, J., absent.

Judgment accordingly.