Harold J. Crawford, J.
This is a motion to confirm the report dated March 18, 1965 of the Honorable Samuel S. Tripp, Special Referee, and for the entry of a judgment in accordance with its findings and recommendations.
This court had before it, in September, 1964, a special proceeding instituted by Neilson Realty Corp., a judgment creditor, under CPLR 5227, to enforce payment of its judgment against Benjamin Mailman from the sum of $7,550 due him under a judgment he had obtained against the Motor Vehicle Accident Indemnification Corporation (MVAIC). A cross application was made, under CPLR 5240, by Avrum J. Schrager, appearing pro se and as attorney for Benjamin Mailman, for an order directing that the moneys due his client from MVAIC be first used to pay his fee and disbursements and to satisfy the liens of Companion Life Insurance Company, St. Joseph’s Hospital and the assignments his client made to Drs. Schwartz and Gershman and the Department of Welfare.
The court referred the entire matter to the Special Referee to hear and report with findings and recommendations. On March 18, 1965 the Special Referee filed his report with the recommendation that 11 judgment should be entered directing MVAIC to pay out of the $7,550 judgment obtained against it by Mr. Mailman, to the following persons, the amounts indicated:
“ 1. Avrum J. Schrager, Esq.................$3,171.03
2. Companion Life Insurance Co............. 754.00
3. St. Joseph’s Hospital of Far Rockaway____ 840.10
4. Dr. Martin Schwartz..................... 310.00
5. Dr. Maurice Gershman................... 480.00
6. City of New York, Department of
Welfare.............................. 1,994.87
Total..............$7,550.00 ”
Neilson Realty Corp. does not dispute the facts as found by the Special Referee. In fact it concedes that Avrum J. Schrager has a valid lien for his legal services and is entitled to be paid before all other claimants. However, it contends that its judgment lien enjoys a right to priority of payment and satisfaction that is superior to all other claims and it opposes the confirmation of the Special Referee’s report on the ground that, in find *262 ing the liens and assignments superior to its judgment lien, the Referee has erroneously applied the law to the facts.
With this position the court disagrees and, because of the continuing need for clarifying decisional law in this area of litigation, the material portions of the ¡Special Referee’s report are herewith set forth in full:
“ Article 9 of the Workmen’s Compensation Law was designed to provide an injured employee with a substitute for his wages lost during disability. Whatever benefits he receives, however, are intended to be repaid out of any recovery he may obtain from the third person who caused the disabling injury. (State Ins. Fund v. Parrilla, 31 Misc 2d 835.) To secure such repayment the legislature created an unequivocal lien upon the recovery as soon as it comes into being, subordinate, however, to the lien and expenses of the attorney through whose efforts the recovery was obtained. (Workmen’s Compensation Law, § 227, subd. 1; Osorio v. Incremone, 39 Misc 2d 585.) Thus, after attorney Schrager has been paid $3,171.03 for his services and expenses as computed above, Companion Life Insurance Company is entitled to reimbursement in the sum of $754 for the disability payments it made to Mr. Mailman. (Cf. Lamonte v. Shapiro, 44 Misc 2d 643, 646.)
“Next in the order of priority is St. Joseph’s Hospital of Far Rockaway. Under subdivision 1 of section 189 of the Lien Law a lien exists in favor of voluntary and municipal hospitals ‘ against the proceeds of personal injury claims of persons admitted on account of such injuries to the hospital within a week after the injury for which the claim is made. ’ (Matter of Meyer v. New York Hosp., 7 A D 2d 60, 64, app. dsmd. 5 N Y 2d 1021.) I find that St. Joseph’s Hospital has complied with the requirements of the statute and, therefore, has a hospital lien upon and payable from the proceeds of Mr. Mailman’s judgment for damages on account of the personal injuries he sustained on August 5,1961, to the extent of $840.10, representing reasonable charges for treatment, care and maintenance at the hospital from March 16 to March 31, 1964, the period of his readmission for treatment of the exacerbation of the original injuries.
“It has been held that proceedings pursuant to related sections 5225 (subd. [b]) and 5227 of the CPLR ‘are plenary in that the court can adjudicate rights and interests in the debt or fund which is the subject matter of the proceeding.’ (Matter of Ruvolo v. Long Is. R. R. Co., 45 Misc 2d 136, 146.) It follows that the validity of Mr. Mailman’s assignments to his two physicians and to the Department of Welfare *263 must "be adjudicated in these proceedings. Such adjudication is necessary to determine whether and to what extent petitioner Neilson Realty Corp., by virtue of its judgment for $1,738.64 docketed on March 11, 1964, is entitled to share in the proceeds of the judgment recovered by its judgment debtor remaining after the statutory lienors have been paid in full.
“Mr. Mailman’s claim for personal injuries sustained by him on August 5,1961 did not become a ‘ debt ’ within the meaning of CPLR 5201 until the damages were fixed by the arbitration award dated June 5, 1964. An untried personal injury action becomes a debt only when the damages are fixed. (See Wallace v. Ford, 44 Misc 2d 313, 318.) In Matter of Ruvolo v. Long Is. R. R. Co., (supra), it was held that a personal injury negligence action became a debt when the plaintiff therein accepted the defendant’s offer of settlement in a stated amount by delivering his general release and affidavit agreeing to accept the settlement.
“ Thus, when Neilson Realty Corp. served upon MYAIC on June 29,1964 a restraining notice (CPLR 5222, subd. [b]) and a subpoena, a debt to Mr. Mailman was already in being by reason of the award in arbitration made on June 5,1964. By such service, this judgment creditor became a judgment lienor with respect to MYAIC’s debt to Mr. Mailman. (Matter of Wickwire Spencer Steel Co. v. Kemkit Scientific Corp., 292 N. Y. 139, 142; Matter of Goldberg, 43 Misc 2d 1037, 1039; Matter of Ruvolo v. Long Is. R. R. Co., supra.) Its judgment lien, however, attached only to so much of that debt as still belonged to Mr. Mailman. "We know that he had already been divested of the total sum of $4,765.13 by reason of the three valid statutory liens. Whether the balance of the judgment amounting to $2,784.87 still belonged to Mr. Mailman at the time petitioner Neilson Realty Corp. became a judgment lienor depends upon the validity of the assignments that Mr. Mailman executed and delivered before the damages in his personal injury action became fixed.
“ Section 41 of the Personal Property Law [Now General Obligations Law, § 13-101] provided in pertinent part: ‘ Any claim or demand can be transferred, except in one of the following cases: (1) Where it is to recover damages for a personal injury. ’ In other words, a cause of action for personal injuries may not be validly assigned. (General Acc., Fire & Life Assur. Corp. v. Zerbe Constr. Co., 269 N. Y. 227, 231; Matter of Walton, 20 A D 2d 386, 389; Matter of Ruvolo v. Long Is. R. R. Co., supra.) As far back as 1882 our Court of Appeals recognized the distinction between an assignment of a cause of action for personal injuries and an assignment of the proceeds of such an *264 action. (Williams v. Ingersoll, 89 N. Y. 508.) This distinction still obtains. As late as November, 1963, the Appellate Division of the Second Department (Grossman v. Schlosser, 19 A D 2d 893, 894) held, by reference to Williams, “ that the assignment of the proceeds ” of a personal injury cause of action, ‘ prior to its settlement or adjudication, was valid and effectual as an equitable assignment against the assignor and his attaching creditor, and that such an assignment was not against public policy. ’
“ It follows that if the assignments here involved were of the proceeds of Mr. Mailman’s personal injury action and otherwise valid, then he had divested himself of all his interest in said monies after the payment of the statutory liens, leaving him with nothing remaining which would be subject to attachment or available on execution. A bona fide common-law assignment of the proceeds of a personal injury action gives precedence to the assignees over judgment creditors whose liens may attach only to such interest as remains in the judgment debtor. (Prospect Coal Co. v. Commercial Credit Corp., 161 Misc. 780; Matter of Aird Is. v. De Paula, 29 Misc 2d 666, 669; Weinberg v. Schwartz, 14 N Y S 2d 554.) In Manufacturers Trust Co. v. Shapiro (82 N Y S 2d 250, 251), Mr. Justice Hofstadter noted that an assignment is complete when made despite the failure to give notice to third parties. In the case at bar, copies of the three assignments were served upon Mr. Mailman’s attorney, Avrum J. Schrager, Esq. Both, attorney and client, upon receipt of the proceeds of the judgment would be obligated to honor valid statutory liens and assignments. (Brinkman v. Moskowitz, 38 Misc 2d 950; Aiello v. Levine, 44 Misc 2d 1067.) These must be honored no less when sought to be enforced against a garnishee under CPLR 5225, subd. (b) or 5227, before the fund has been turned over to its judgment creditor, Mailman, and his attorney. In proceedings against third parties the court must adjudicate the rights of all persons claiming an interest in the subject matter of the proceeding, be they parties or interveners. (Sixth Report to the Legislature by Senate Finance Com. [N. Y. Legis. Doc., 1962, No. 8], pp. 486, 488-489; Matter of Ruvolo v. Long Is. R. R. Co., supra.)
‘ ‘ Unlike a voluntary or municipal hospital, a physician has no statutory lien on the proceeds of a settlement or a recovery in a personal injury action, but is ‘ relegated to a plenary action as an ordinary creditor.’ (Woodley v. National Transp. Co., 208 Misc. 732, 733; Matter of Glazer v. Department of Hosps., 2 Misc 2d 207; Viviani v. Howard Johnson’s Inc., 130 N Y S 2d 331.) A valid assignment to a physician of the proceeds of *265 his patient’s personal injury action, however, entitles him to receive so much thereof as is required to pay for the medical services rendered, to the extent that any part of such proceeds is the property of the assignor. Such, in my opinion, was the effect of the assignments to Doctors Schwartz and Gershman dated respectively January 24, 1962 and July 13, 1963. Except for the names of the assignees, both assignments read as follows:
“‘In consideration of the professional services of Dr. * * * rendered, and to be rendered, in treating me for personal injuries which I received as the result of an accident on or about above date, caused by above defendant, etc., I hereby assign, transfer and set over to said Dr. * * * and authorize the deduction on my behalf, such monies as are due and to become due to said Doctor, and this constitutes irrevocable authorization to pay said Dr. * * * directly such amount due him as evidenced by his bill and to secure for me a paid receipt.
“ ‘ This Assignment is hereby made a lien against my claim and any and all monies payable to, or for my account, therefor and is duly made to said Dr. * * as security for the payment of his bill for medical services, but the acceptance of same nevertheless does not in any way relieve the undersigned from the payment of my obligation to said Dr. * * * because this is an absolute, and not a contingent, obligation I owe.’
‘ ‘ While the foregoing form of assignment has much to be desired by way of draftsmanship and clarity, Williams v. Ingersoll (supra) tells us at page 522: ‘ The form of words used in making the agreement is not alone to receive attention, but all the circumstances of the transaction are to be considered. It is a rule in equity that anything which shows an intention to assign on the one side and from which an assent to receive may be inferred on the other will operate as an assignment if sustained by a sufficient consideration.’ That Mr. Mailman intended to assign to his physicians ‘ any and all monies payable to, or for my account ’ arising out of his claim for personal injuries sustained as the result of the accident involved, there can be no doubt. Indeed, he stated in both instruments that the assignment ‘ is hereby made a lien against my claim and any and all monies payable to, or for my account, therefor ’. Similar language found in the assignment considered in the Williams case (supra, p. 516), was held to validly assign the proceeds of a personal injury claim. I therefore find the assignments to the physicians valid and effectual against the assignor and his *266 subsequent attaching creditors and assignees, to the extent of (a) $310 to Dr. Schwartz and (b) $480 to Dr. G-ershman, leaving a balance of $1,994.87 of the judgment against MVAIC for disposition.
‘1 The Department of Welfare does not claim a lien under section 104-a of the Social Welfare Law (added by L. 1964, ch. 382, eff. April 10, 1964), since most of the public assistance was granted Mr. Mailman and his family prior to the effective date of the new statute which has no retrospective application. This claimant relies solely on Mr. Mailman’s assignment to the department, dated November 27, 1963 reading in pertinent part as follows:
“ ‘I DO HEBEBY SELL, ASSIGH, TRAESEER AHD SET OVER Unto the said James R. Dtjmpsoe, as Commissioner of Welfare of The City of New York, his successors or assigns, all my right, title, claim and interest in and to the proceeds of my claim against * * * and/or any other individual, partnership or corporation, and to any judgment or settlement which I have recovered or may recover by reason thereof, arising from injuries sustained on or about August 5, 1961 at Rockaway Turnpike in Lawrence, Long Island ’.
“ This instrument is a clear and unequivocal assignment and transfer of the proceeds of Mr. Mailman’s personal injury action remaining after the payment of claims having a higher priority. (See Griffey v. New York Cent. Ins. Co., 100 N. Y. 417, 422; Dumpson v. Cohen, 14 A D 2d 871.) It is valid and effective under Williams v. Ingersoll and Grossman v. Schlosser (supra), and in view of the amount due the Department of Welfare, there was nothing left of such proceeds belonging to Mr. Mailman to which the judgment lien of Neilson Realty Corp. could have attached on June 29, 1964, when this judgment creditor became a judgment lienor. (Weiner v. Tele King Corp., 123 N Y S 2d 101, 103.) ”
Accordingly, the motion to confirm the Special Referee’s report is granted and judgment is directed to be entered in accordance therewith.