GEORGE C. CAHOON v. MORGAN & STEARNS, AND G. B. BUNDY, Trustee, AND A. J. WILLARD, Claimant.

### Trustee Process.

Service of a writ on a trustee by the trustee's accepting service is valid to hold the fund in the hands of the trustee as against a subsequent assignee.

Prior to the service on the trustee W. said to him: "If there is any thing due from you to M., the defendant, I want you to pay it to me." The trustee replied that he had been requested to do the same by two others that day. To this W. replied that he claimed it. Held, that this did not constitute notice of an assignment to W. of the debt due the defendant by the trustee.

TRUSTEE PROCESS. Judgment was rendered for the plaintiff on the auditor's report by the consent of parties—and the cause was heard at the June Term, 1865, POLAND, Ch. J., presiding, upon the commissioner's report, as to the trustee's liability—the court deciding that the trustee was not chargeable, and that the claimant was entitled to hold the funds in the trustee's hands,—to which the plaintiff excepted.

The facts found by the commissioner appointed to take the disclosure of the trustee were as follows: Unsettled differences existing between Bundy, the trustee, and Morgan, one of the defendants, they submitted the same to arbitration. G. C. & G. W. Cahoon were the

attorneys for Bundy, and A. J. Willard for Morgan. The hearing was at the office of the Cahoons in Lyndon, and the evidence and arguments were closed near the evening of the 24th of May, 1864. No award was made until some days after. At this time and long before, George C. Cahoon claimed that Morgan & Stearns were indebted to him, and also that they were indebted to G. C. & G. W. Cahoon, which debt they were unable to secure. Before the arbitrators had closed their hearing, Geo. W. Cahoon informed Bundy that the award might be in Morgan's favor, and if so they, the Cahoons, wished to secure it, and proposed to trustee Bundy, and it was agreed then that Bundy should accept service upon a trustee writ, in favor of Geo. C. Cahoon against Morgan & Stearns, as debtors.

About the time the arbitrators left the office, as Bundy was about to sign his name to the acceptance of service on the trustee writ, which had been prepared, A. J. Willard requested Bundy to step to the door, and said to him : "If there is any thing found due from you to Morgan, I want you to pay it to me." Bundy replied that he thought Willard had better wait and see what the award was, and further said "he had been requested to do the same by two others that day." Willard to this answer replied "he claimed it," meaning whatever was awarded, if any thing, from Bundy to Morgan. The interview was very short, part of the reply of Bundy being made as he returned into the office. Bundy returned to the table and signed the acceptance of service, and Willard, who had been out a moment with Morgan, returned, and apprehending what was taking place or had taken place at the table, said : "You are too late ; I have got an assignment of the award." At that time the service had been signed. The Cahoons and trustee supposed that Willard while absent in the ante-room had procured from Morgan the assignment mentioned. But the commissioner found that Morgan on the 19th day of May, 1864, had made an assignment to Willard for valuable consideration of whatever sum Bundy might be owing Morgan, or whatever should be awarded him.

*Geo. C. & Geo. W. Cahoon*, for the plaintiff.

*A. J. Willard*, for the claimant.

The opinion of the court was delivered by

ALDIS, J. 1. The writ was not served upon the trustee by an

officer, but the trustee accepted service by a writing on the back of the writ in the usual form. The claimant insists, that such a service is not valid to hold the funds in the hands of the trustee as against a subsequent assignee. It is true that the trustee process is sometimes called "attaching a debt," because it creates a lien upon the debt as attachment does upon personal property. But the validity of the two kinds of lien rests on wholly different grounds. Attachment of personal property must be by taking possession of it,—but no possession can be taken of a debt. To make the lien valid against the debt all that is required is notice to the debtor (the trustee) of the suit—a mere summons—and this notice we think may be given as a summons in any other case may be, as well by an acceptance of service of the summons in writing on the back of the process, as by actual service by a legal officer.

The language of Judge BARRETT in *Wilder* v. *Weatherhead*, 32 Vt. 767, applies only to volunteer acts of the trustee *after suit* to favor one creditor at the expense of another.

2. Was Willard's notice to Bundy—the notice given before Bundy accepted service of the plaintiff's writ—sufficient to hold the fund? Willard had a written assignment from Morgan of his debt against Bundy. To make the assignment valid as against the plaintiff's trustee process, it was necessary for Willard to give Bundy notice that he (Willard) had such an assignment. No particular form of words is necessary for such a notice; but the idea, the fact, that he had such an assignment, must be fairly and substantially made known to Bundy. What was the notice? The commissioner states that "Willard said to Bundy, ' If there is anything found due from you to Morgan I want you to pay it to me.' Bundy replied that he thought Willard had better wait and see what the award was, and further said he had been requested to do the same by two others that day." So far it is plain that Bundy only understood Willard to make a request of him, and not to give him notice that he asserted a right. And the form of Willard's expression: "If there is anything due, &c., I want you to pay it to me," is that of a request and not of the notice of a claim or the assertion of a right. The commissioner proceeds: "Willard to this answer replied ' he claimed it.'" There the conversation ended. Is the expression " I claim it" sufficient

Cahoon *v.* Morgan et al., Tr. and Cl.

notice? He does not tell Bundy upon what ground he claims it. No allusion is made to an assignment. The claim may be a legal claim —but it may not. It may be a mere moral claim—the insisting upon an equitable or honorable obligation, or the mere urgent expression of a strong desire that Bundy should pay the debt to him. We think it was not a sufficient notice of the assignment; that it did not fairly and reasonably give Bundy to understand that Willard had an assignment of the debt. It is the duty of the party giving such a notice to give it clearly, not to use indefinite or ambiguous expressions. This expression, when considered in connection with the part of the conversation which immediately preceded it, seems more doubtful. Bundy would naturally say to himself—Willard requests me to pay the money to him. This looks as if he had not a legal right to it, for if he had he would assert his right and give me notice of it, and not ask that of me as a favor which he has the legal right to demand. Hence, when he claims it, he means to be understood not that he has a legal right, but rather insists strongly on his request.

When we look into the evidence of Mr. Willard we see that the notice, as he claims it to have been given, was clear, positive, certain. But Bundy denies that he had such notice. The commissioner does not state the notice as Mr. Willard claims it to have been given, but rather as Bundy relates it. We must regard the notice to have been what the commissioner reports it, and as reported it was not sufficient.

Judgment reversed, and judgment that the trustee is liable to the plaintiff for the funds in his hands according to his disclosure.