NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT,

FRANK CHAMBERS et al.

1. Complainant, a fire insurance corporation created by the laws of Connecticut, and doing business by an agent in New Jersey and also in Pennsylvania, and having voluntarily subjected itself to suit in the Pennsylvania courts, by service of process upon its agent there, became indebted to a resident of New Jersey, upon a loss by fire occurring in New Jersey. A creditor of the New Jersey creditor, who resided in Massachusetts, sued out of a court of Pennsylvania a writ of foreign attachment against the resident of New Jersey, and served the same upon the agent of complainant in Pennsylvania. Afterwards the resident of New Jersey assigned his claim against complainant to another resident of New Jersey, who sued complainant in a New Jersey court of law to recover the amount due from complainant to its creditor in New Jersey. Whereupon complainant filed its bill of interpleader in this court, and paid the amount of its debt into court. After which the Massachusetts creditor and the New Jersey assignee interpleaded.—*Held*, that the proceedings in the Pennsylvania court gave the Massachusetts creditor a lien upon the debt superior to the right of the assignee.

National Fire Ins. Co. v. Chambers.

2. The rule that, in order to give a court jurisdiction in cases of foreign attachment, the *res* must be within the territorial jurisdiction of the court, applies only to tangible chattels capable of actual seizure and not to choses in action.

3. Jurisdiction to fasten choses in action by garnishee process, depends upon the ability to serve process of garnishment upon the debtor of the absent defendant within the territorial jurisdiction of the court.

4. The doctrine advanced by certain judges that, in order to bring the *res* within the jurisdiction, the court may, *pro hac vice*, treat the *situs* of the debt as following the domicile of the debtor and not that of the creditor, considered and doubted. And *semble*, that a chose in action, strictly speaking, has no *situs*.

5. A corporation is capable of having several domiciles and of being sued at the same time in more than one jurisdiction. The contrary doctrine advanced and acted upon by the court in *Douglass* v. *Phœnix Insurance Co.*, *138 N. Y. 209*, examined and repudiated.

---

On interpleader.

The contest in this case is between the defendants Harding, Whitman & Company on the one side and Mr. J. J. Crandall on the other. Both parties claim under the defendant, Frank Chambers, an admitted creditor of the complainant.

Harding, Whitman & Company claim under an attachment issued out of the court of common pleas No. 4, of the city of Philadelphia, against Chambers, and Mr. Crandall claims under an assignment from him subsequent in date to the attachment of Harding, Whitman & Company. The question is whether Harding, Whitman & Company's attachment gave them a lien upon the debt due from complainant to Chambers; or, as otherwise expressed, effected an involuntary assignment of it from Chambers to them.

The facts which clearly appear are as follows:

Chambers was and is a resident of New Jersey, engaged in manufacturing, with a plant at Camden, which was insured against loss by fire by the complainant and other insurance companies. A fire occurred in it on the 20th of June, 1893. On or shortly before the 29th of June the representatives of the different underwriters met and adjusted the amount of the loss, and also

apportionèd it as between themselves, with the result that· the amount allotted to the complainant was $591.68. On June 29th the defendants, William P. Datz and Alois D. Datz, trading as W. P. Datz & Brother, sued out of the court of common pleas No. 2, of the county of Philadelphia, State of Pennsylvania, a writ of foreign attachment against Chambers, returnable on the third Monday of September, 1893, founded on a claim of $285.91 against Chambers. The instructions endorsed on that writ commanded the sheriff to attach

"all and singular the goods and chattels, lands and tenements, rights and credits of the defendant, Frank Chambers, in whose hands soever they may be, and summon them as garnishees, and especially all sums due by the National Fire Insurance Company of Hartford, Connecticut, and Rochester German Insurance Company, to said defendant, and summon them as garnishees."

By virtue of that writ the sheriff of the county of Philadel-·phia, by his deputy, at a quarter after three o'clock, June 29th, made the usual declaration in attachment in the presence of William F. Bradway, named in the writ as the agent of the complainant in Pennsylvania, designated as such by the complainant, at his office in the city of Philadelphia.

The complainant duly appeared to this suit, and then, according to the .practice in the Pennsylvania courts, the plaintiffs, Datz & Brother, served interrogatories upon it, wherein, among other questions, they asked whether at the time the writ was served upon complainant's agent there was anything due from it to Frank Chambers, on a policy of insurance. To that interrogatory the complainant answered that the sum of $591.68 was due from it to said Frank Chambers, which it was willing and ready to pay to the person entitled to receive the same.

On the 3d of August, 1893, the defendants Harding, Whitman & Company, sued out of the court of common pleas No. 4, of the city of Philadelphia, a like writ of attachment against Frank Chambers, returnable on the third Monday of September, 1893, which the sheriff served in precisely the same manner as he had served the previous one of Datz & Brother. To that writ the complainant herein duly entered an appearance.

In each of the attachment suits the respective plaintiffs filed statements of their claims, with an affidavit of one of the firm that the amount claimed was due, and in each judgment was entered against the defendant Chambers—in the case of Datz & Brother for the sum of $229.92, March 26th, 1894, and in the case of Harding, Whitman & Company for $5,549.93, April 6th, 1894.

On the 30th of January, 1894, seven months after the adjustment of the loss, the defendant Chambers commenced an action in contract against the complainant, in the Camden county circuit court, founded on the amount found to be due, as above stated, upon the policy of insurance issued by complainant to him, under which the loss occurred, and served process upon complainant through its agent in this state. Whereupon, on the 19th of February, 1894, the complainant filed its bill of interpleader against Datz & Brother, Harding, Whitman & Company, and Chambers, and paid into court the sum of $591.68, and obtained from this court an injunction against further prosecution of the garnishment proceedings by Datz & Brother and Harding, Whitman & Company against it in the courts of Philadelphia, and the action at law by Chambers in the Camden circuit. Motion was made to dismiss this bill before Vice-Chancellor Green, and was refused by him on the 20th of March, 1894. The usual order discharging the complainant, and that the defendants interplead, was made on the 23d of July, 1894.

Datz & Brother did not submit to the jurisdiction of this court, and on the 3d of April, 1894, a rule to show cause was granted in their suit in common pleas No. 2 why judgment should not be entered against the insurance company, complainant herein, as garnishee. That rule was resisted, and the complainant was permitted to file supplemental answers to the interrogatories which had been previously administered to it, according to the practice in the Pennsylvania courts, and in those, by way of plea *puis darrein continuance*, it set up the suit brought by Chambers against it in the Camden circuit, and that, being advised that it would not be able to set up as a defence at law to that action the attachment proceedings in Pennsylvania,

it had filed its bill of interpleader in this court, and had obtained an injunction against Chambers and Datz & Brother. It further set up as an affirmative defence to the proceedings in garnishment that the amount due to Chambers under its policy was not due or payable in the State of Pennsylvania, but at the main office of the company, in the city of Hartford, Connecticut; that the policy of insurance was not issued in the State of Pennsylvania, nor had the amount due thereunder, either at the time of the writ of attachment or prior or subsequent thereto, been in the possession of the agent of the company in the State of Pennsylvania, or in the hands of any other person in the State of Pennsylvania.

The court of common pleas No. 2, after argument, in a considered judgment reviewing the authorities, overruled this defence, holding that this court had no power to enjoin Datz & Brother, and that the complainant was subject to garnishment in Pennsylvania through its duly authorized agent, and entered judgment against complainant for $299.92, the amount previously recovered against Chambers, with $16.12 costs. This judgment has been paid by the complainant.

Harding, Whitman & Company did not follow up their judgment in attachment against Chambers by garnishee proceedings against the complainant herein, but obeyed the injunction of this court.

Mr. John J. Crandall presented his petition to this court on the 20th of April, 1894, setting up that on the 19th of January, a few days before the commencement of the suit by Chambers against complainant in the Camden circuit court, he (Chambers) assigned to him (Crandall) all the moneys to be recovered on the policy, and authorized him to proceed to recover the money by suit in Chambers' name. On the basis of that petition, an order was made admitting Mr. Crandall as a defendant herein, and on the 19th of May, 1894, he filed his answer, setting up that he was entitled to the moneys to be recovered in the suit in the Camden circuit, by virtue of the assignment to him of the 19th of January, 1894, and asserting that Harding, Whitman & Company obtained no rights, either at law or in equity, by virtue of

their attachment proceedings in the State of Pennsylvania. Incorporated in this answer of Mr. Crandall was a cross-bill praying that the money might be paid to him.

The defendants Harding, Whitman & Company answered on the 19th of July, 1894, setting up their claim against Chambers and the attachment in the State of Pennsylvania; also, a judgment recovered in this state against Chambers, on the same claim and for the same amount.

By the statutes of Pennsylvania, all of which were put in evidence, it is provided as follows:

"No insurance company, not of this state, nor its agents, shall do business in this state, until he has filed with the insurance commissioner of this state a written stipulation, duly authenticated by the company, agreeing that any legal process affecting the company, served on the insurance commissioner, or the party designated by him, or the agent specified by the company to receive service of process for said company, shall have the same effect as if served personally on the company within this state; and if such company should cease to maintain such agent in this state so designated, such process may thereafter be served on the insurance commissioner, but so long as any liability of the stipulating company to any resident of this state continues, such stipulation cannot be revoked or modified, except that a new one may be substituted, so as to require or dispense with the service at the office of the said company within this state, and that such service of process, according to this stipulation, shall be sufficient personal service on the company. The term process shall be construed to mean and include any and every writ, rule, order, notice or decree, including any process of execution that may issue in or upon any action, suit or legal proceedings to which said company may be a party by themselves, or jointly with others, whether the same shall arise upon a policy of insurance or otherwise, by or in any court of this commonwealth having jurisdiction of the subject-matter in controversy, and all writs, rules, orders, notices or decrees aforesaid, shall be directed to the sheriff, constable or other officer authorized by law to serve similar writs, of the county wherein the same shall be issued, who is hereby authorized to serve the same on any and every person or persons, body politic or corporate, named in said process with said company, either as plaintiff, defendant or otherwise, or who may be impleaded in said action, suit or proceeding with said company, found in said county, and either before or after the service on the person or persons, body politic or corporate, found in said county aforesaid as may be directed by the plaintiff or person issuing said process or his attorney, and in the absence of such direction, as shall be most convenient, the officer to whom said process may be directed shall, by writing indorsed on or attached to said process, deputize the sheriff, constable or other officer of the county where the state agent designated by any company, as provided by law, to receive service of process for said

company may reside, to serve the same on him ; and in default of an agent appointed by the company as aforesaid, then the officer so charged with the service of said process, shall, in like manner, deputize the sheriff, constable or other officer aforesaid of the county where the agent, if any there be, named by the insurance commissioner may reside, to serve the same on him ; and in default of such agent named by the insurance commissioner as aforesaid, then in like manner to deputize the sheriff, constable or other officer as aforesaid of the county where office of the insurance commissioner may be located, to serve the same upon him ; and each and every service so made, shall have the same force and effect, to all intents and purposes, as personal service on said company, in the county where said process issued ; and the fees of the officers serving said process shall be the same as are allowed by law for services in similar cases, with mileage allowed by law in such cases, the distance to be computed from the residence of the officer serving or executing the same, and no further, and all necessary postage paid by either of said officers shall be charged for as costs in the case." *Act April 4th, 1873 § 13 (P. L. of 1873 p. 20)*; *Bright. Purd. Dig. p. 1060 pl. 147 ; Pep. & L. Dig. p. 2391 pl. 114.*

The proofs show that the complainant had given the consent provided for in that act, and that William F. Bradway, upon whom the writ of attachment was served by the Philadelphia sheriff as the representative of the complainant herein, was duly appointed the agent of the complainant for the State of Pennsylvania ; also, that Chambers was indebted to Harding, Whitman & Company in over $5,000 at the date of the issuing of the attachment, and had notice of the attachment proceedings.

*Mr. Thomas B. Harned,* for Harding, Whitman & Company.

*Mr. John J. Crandall,* for himself.

PITNEY, V. C.

The only question here involved is this, Did Harding, Whitman & Company, by their proceeding in attachment in the Philadelphia common pleas, obtain a lien upon the debt due from the complainant to Chambers, now represented by the fund in court in this cause ? or, as it may be otherwise expressed, Did the proceeding effect an involuntary assignment of the debt from Chambers to Harding, Whitman & Company ? If such was the result of their proceeding, it seems to me to follow conclusively

that they must prevail in the present contest upon the familiar principle that he who is first in time is best in right.

A faint attempt was made to show, by proofs, that Mr. Crandall's interest in the claim antedated the attachment of Harding, Whitman & Company. I think this attempt failed. He put himself, both in his petition and in his answer, wholly upon his assignment of January, 1894, and at the argument he relied wholly upon the ground, as I interpret his argument, that the Pennsylvania court had no jurisdiction, no power to seize this debt, and that the proceedings for that purpose should not be recognized as valid by this court.

The proceedings in the *Datz Case* show clearly enough that the Pennsylvania courts, if properly sued by Harding, Whitman & Company, will proceed to render judgment against the complainant, as garnishee of Chambers, in favor of Harding, Whitman & Company. The only difference between the case of Harding, Whitman & Company and the *Datz Case* is that Harding, Whitman & Company are non-residents of Pennsylvania. But the Pennsylvania statute, with regard to foreign attachments, makes no distinction between domestic and foreign creditors in this behalf, and I can find no trace of any such distinction having been taken in any of the decided cases. *Franklin Fire Insurance Co.* v. *West, 8 Watts & S. 350; Girard Fire Insurance Co.* v. *Field, 45 Pa. St. 129; Appeal of Jaffray & Co., 101 Pa. St. 583; Chase* v. *Ninth National Bank of New York, 56 Pa. St. 355.* Oral proof was given in this case, by a member of the Philadelphia bar, that there was no such distinction ; that non-resident creditors had the same rights to sue out writs of attachment against non-resident debtors as have resident creditors of that state. And such is the rule in our own and in most, if not all, the other states of the union. I am, therefore, forced to the conclusion that if Harding, Whitman & Company had not submitted themselves to the jurisdiction of this court, but had proceeded in their attachment suit with the ordinary proceedings against complainant as garnishee, they would have recovered judgment against complainant which would have bound it in all jurisdictions.

It follows that it is thoroughly established that, according to the system of jurisprudence administered by the courts of Pennsylvania, Harding, Whitman & Company did acquire a lien upon this debt due from complainant to Chambers by their proceedings in the Pennsylvania courts.

Is there anything in that system, as manifested in this case, which is contrary to international law, or to the fundamental principles of natural justice recognized by all civilized nations?

*First.* Does it result in rendering judgment against a party without having acquired jurisdiction of his person by notice served upon him within the territorial jurisdiction? The language of the Pennsylvania act is

"that any legal process affecting the insurance company, served on the agent specified by the company to receive service of process for said company, shall have the same effect as if served personally on the company within this state."

Clearly, the meaning of the language " served personally on the company within this state," is served personally on a company domiciled within this state. Such has been the construction put upon it by the courts of Pennsylvania. And that the term " process shall be construed to mean and include any and every writ, rule, order, notice or decree, including any process of execution that may issue in or upon any action, suit or legal proceedings to which said company may be a party by themselves or jointly with others, whether the same shall arise upon a policy of insurance or otherwise, * * * and every such service shall have the same force and effect, to all intents and purposes, as personal service on the company in the county where said process shall issue."

It is difficult to conceive language more comprehensive than this. It clearly includes process of garnishment. And the consent filed with the insurance commissioner, and the appointment of Bradway as its agent for that purpose in Philadelphia, was a voluntary consent to subject itself to that jurisdiction. Clearly, the complainant cannot object to the validity of the law.

*Second.* Can its creditors object? It is difficult to see how they can be injured by it. Take the present case. If Mr. Cham-

bers had desired to apply this debt due him from complainant to a particular purpose—for example, the payment in whole or in part of a particular creditor of his—he could have done so by prompt action for that purpose, or he could, by a proper assignment, have divided it equally among all his creditors, and his *bona fide* assignee, whether he held for himself individually or in trust for the several creditors of Chambers, if, in fact, prior in time, would have been first in right. But Chambers took no such action for over six months, with the result that two of his creditors did take prompt action, through the courts of Pennsylvania, to forcibly apply the amount due Chambers from complainant to the payment of their debts against Chambers.

Now I can find no injustice in such proceeding. It is the ordinary process of attachment and garnishment in use in all jurisdictions deriving their laws from England. And it is difficult to perceive what difference it makes to Chambers, or his subsequent assignee, whether it be instituted in Pennsylvania as the conventional domicile of the garnishee, or in Connecticut, its actual domicile. Wherever instituted, the result is the same, viz., to forcibly apply a debt due from complainant to Chambers to the payment, *pro tanto,* of a debt due from Chambers to a third party who is the actor in the suit. The possible hardship and injustice to Chambers in such exercise of power arises out of the proceeding against him, as an absent debtor, by publication and without personal notice served within the territorial jurisdiction. But this is a source of hardship and injustice common to all proceedings by foreign attachment wherever taken. It was no greater hardship or injustice to him to compel him to go to Pennsylvania than to Connecticut to defend unjust or unfounded claims, if any, set up against him. No question can possibly be raised as to the right of the legislature of Connecticut, complainant's domicile of origin, to authorize its court to entertain such jurisdiction.

In every case the means of notice to the defendant in attachment of such claims is the same, viz., either by inquiry—in this case—of his debtor (the garnishee) why he does not pay his debt to him (Chambers); or, if tangible chattels be seized, then by visual observation of such seizure. This mode of notice, of

course, is in addition to the usual statutory notice by publication in use by all jurisdictions.

But it is said that the subject-matter of seizure, the *res*, must be within the jurisdiction of the court where the attachment proceeding is taken, otherwise the assumption of jurisdiction over it is unwarranted by general international law founded upon fundamental principles of justice; and that, in the case of a debt attached, the debt is the *res*, and cannot be said to be in a jurisdiction where neither the debtor nor creditor is domiciled; and this is the precise point of the argument made by Mr. Crandall. He says that the *res* attempted to be dealt with by the Pennsylvania court was never within its jurisdiction, because it was owing by a corporation domiciled in Connecticut to a creditor domiciled in New Jersey. Let us see what substance there is in this point.

The precise *res* here attached was a chose in action—the right of Chambers to sue the complainant and recover judgment against it, and seize its property. Now, by the statute of Pennsylvania, it seems to me that he had the right to cross into Philadelphia and bring an action against complainant in the Pennsylvania courts upon his policy, not as an artificial person casually and temporarily present in the state, but as being provisionally domiciled there for the purpose of being sued. That statute is wide and sweeping in its provisions, and does not limit the right of suit to residents of Pennsylvania upon contracts made in that state, as did the statute in question in *Lafayette* v. *French, 18 How. 404,* or that in question in *Meyer* v. *Insurance Co., 40 Md. 575.* If, then, the courts of Pennsylvania were open, as the course of decisions shows them to be, to Mr. Chambers to sue the complainant on his policy in the State of Pennsylvania, why was not the right so to do attachable? If the debt had been due to Mr. Chambers from a natural person domiciled in Connecticut, and that natural person had been present in Pennsylvania, not casually and temporarily, but with a permanent place of business there, and had been served with the attachment at the suit of the present contestants against Chambers as a foreign resident, would not that individual debtor have been properly garnished

in the State of Pennsylvania? It seems to me that he would, and that the right of action would, for the time being, have been within the jurisdiction of that court. Judge Waples, in his book on *Attachments* (at *p. 249*), uses this language, which seems to be in point:

"The credit is attachable when it has followed the person garnished (who is the debtor to the absent defendant) and has thus come within the jurisdiction; when it is collectible within the jurisdiction."

If, then, Mr. Chambers could have brought suit against complainant in the Philadelphia courts upon his claim and recovered judgment against it, binding in all jurisdictions, I see no reason why such right of action could not be attached in the Pennsylvania courts.

Substantially that proposition was decided by the supreme court of Massachusetts in the case of *National Bank of Commerce v. Huntington, Little Rock and Fort Smith Railroad Co., as trustees (garnishees), 129 Mass. 444.* In that case the plaintiff sued out trustee process, presumably by foreign attachment, against the railroad company by reason of a debt it owed to the defendant Huntington, who was a debtor of the plaintiff. That company was domiciled wholly in the State of Arkansas, having been created by the laws of that state, and all its property was there situate, but it had an office for the transaction of all its ordinary financial business in the city of Boston. The opinion of the court, after showing by citation of previous cases that the laws of that state at one time were unfavorable to trustee process against corporations (see *Drake Att. (6th ed.)* § *478*), proceeded to say (at *p. 446*) that the law was amended "by providing that non-residents and corporations established by the laws of another state may be summoned as trustees, if they have a usual place of business in this commonwealth. *Statutes of 1870 ch. 194.*" And it was held in that case, after consideration of all the cases, that the railway company could be garnished as trustees of a debt they owed to Huntington, the defendant in the suit. This language is used (at *p. 449*): "There is no doubt that a state may prohibit foreign corporations from transacting business

within its limits, or it may permit them to do so upon such proper terms and conditions as it may prescribe. It is clearly to be implied from the statute that a foreign corporation may have a usual place for the transaction of its business within this commonwealth; and it is equally clear that, in exercising such privilege, it is subject to the provisions of this statute, and is liable to be summoned as trustee."

I see no difference between the statute of Massachusetts just recited, giving in express terms the power to garnishee foreign corporations, and the construction put upon the Pennsylvania statute by the courts of that state. Each provides and holds, in effect, that a foreign corporation which is a debtor and has a place of business or agent, for the purpose of being sued, in the respective states, may be made a garnishee or trustee of a debt due from it.

The question whether or not a certain statutory provision does have the effect of giving the right of garnishment, and whether that statutory regulation has been followed in a particular proceeding, is a matter entirely for the construction of the courts of the jurisdiction. Their decision upon the subject is final, and we cannot go behind it.

The precise question now under consideration is not whether the statutes of a particular state have, in fact, properly construed, subjected foreign corporations doing business in the state to process of garnishment on account of debts due by them to non-residents, but whether such legislation is beyond the power of the state, because contrary to international law and fundamental principles of justice. On this point the weight of authority, as I think, is clearly in favor of its validity. *Fithian* v. *New York and Erie Railroad Co.,* *31 Pa. St. 114; Barr* v. *King, 96 Pa. St. 485; Railroad* v. *People, 31 Ohio St. 537; McAllister* v. *Penn Insurance Co., 28 Mo. 214; Brouser* v. *New England Fire Insurance Co., 21 Wis. 512; Hannibal and St. Joseph Railroad Co.* v. *Crane, 102 Ill. 249; Selma Railroad Co.* v. *Tyson, 48 Ga. 352; National Bank* v. *Burch, 80 Mich. 242; Railroad Company* v. *Thompson, 31 Kan. 180;* and see other cases cited, *8 Am. & Eng. Encycl. L. pp. 1131, 1132.*

National Fire Ins. Co. v. Chambers.

I have already shown, to my own satisfaction at least, that no injustice is done the creditor by such legislation. He must, in this case, be presumed to have contracted with the complainant with the knowledge, which is quite common, that the various insurance companies of this country, though chartered and having their legal domicile in some one particular state, do, in fact, do business in many states upon terms of establishing and maintaining in each of them a domicile for purposes of suits at law. His action against the complainant, commenced in the Camden circuit court by process served on its agent there, is a striking illustration of the situation of affairs in this respect.

In the leading case of *Embree & Collins* v. *Hanna, 5 Johns. 101*, the case was this: A resident of Maryland was indebted to a creditor, who was a non-resident of Maryland, and a creditor of this creditor, who was also a non-resident of Maryland, sued out an attachment from the court of Maryland, pursuant to the laws of that state, and garnished the Maryland debtor. While these proceedings were pending, the Maryland debtor (garnishee), happening to be in New York, was there arrested at the suit of his immediate creditor and pleaded the Maryland attachment proceedings in abatement, and it was held in an opinion delivered by Chief-Justice Kent, wherein he reviews all the authorities up to that time, that the plea was good.

Mr. Brown, in his treatise on *Jurisdiction* (at § *150*), lays down the rule that

"all the property in debts belongs to the creditors to whom they are payable, and follows the creditor's domicile. His domicile fixes the *situs* of this species of property."

And he seems to be supported by Mr. Justice Story (*Confl. L.* § *399*) and by the other authorities cited by him.

Mr. Justice Greer, in *Caskie* v. *Webster, 2 Wall. Jr. 131*, uses this language: "A debt is a mere incorporeal right. It has no *situs*, and follows the person of the creditor."

In *Williams* v. *Ingersoll, 89 N. Y. 508*, the learned judge (Earl) says: "A debt always under general jurisprudence has its *situs* either at the domicile of the creditor or where the written

31

obligation upon which it is due is held, and not at the *situs* of the debtor." And to the same effect is Mr. Wharton (*Confl. L.* §§ *359, 361*).

It is to be observed that the policy of insurance in this case fixes no place for the payment of any loss incurred under it. It appears on its face to have been negotiated at and issued by the Camden agency of the complainant.

And see, on the subject of the *situs* of choses in action, *Mc-Dougal* v. *Paige, 55 Vt. 187; S. C., 45 Am. Rep. 602*, where it was held, after a consideration of numerous authorities, that a debt due by a citizen of Vermont to a citizen and resident of Canada was not discharged by a certificate of discharge in bankruptcy of the Vermont debtor under the Federal Bankrupt law, for the reason that the *situs* of the debt was at the domicile of the creditor, and so beyond the jurisdiction of the federal court.

To the same effect is *Speed* v. *May, 17 Pa. St. 91.* And see the opinion of Mr. Justice Peckham, in *Guillander* v. *Howell, 35 N. Y. 657* (at *p. 661*), where the clear distinction in this respect between debts and movables, consisting of tangible property capable of seizure and levy, is pointed out, and it is held that the latter may have a *situs* independent of the domicile of the owner, while the former (debts) are incapable of such *situs* and follow the domicile of the owner, who is the creditor. And this seems to be necessarily so upon principle, for a debt is an intangible thing and has no actual *situs*, unless such be attached to the evidence of the debt, and that is usually in the actual possession, as in this case, of the creditor.

In fact, the burden of the argument of Mr. Crandall was that the debt due from the complainant to Chambers had its *situs* in New Jersey, and therefore was not within the jurisdiction of the Pennsylvania courts. But the difficulty with this argument is that it goes too far, and would defeat all foreign attachments so far as relates to reaching debts due the defendant in attachment, because they would all be held to have their *situs* with the non-resident defendant out of the state, and so be beyond the jurisdiction of the state.

Some confusion and seeming inconsistencies are found in the books, growing out of a failure to distinguish between the character of the two kinds of chattels which are sought to be reached by foreign attachment, viz., tangible chattels and choses in action.

In order to obtain a lien upon tangible chattels, which alone are subject to seizure and levy, it is necessary that there should be an actual or constructive manucaption by the officer. It is certainly so in this state under our system of procedure, and I think also in most of the other jurisdictions. To effect this actual seizure and levy it is necessary that the chattel should be within the jurisdiction and within the physical power and reach of the officer. Hence the canon that the *res* must be within the jurisdiction. The failure to distinguish in this respect between tangible chattels and choses in action has led to the erroneous notion that the debt or right of action, in order to be reached, must also be within the jurisdiction. But this is not so, for the reason that the debt is incapable of actual seizure, and hence none is necessary. On this point I adopt the language of the supreme court of Vermont in *Cahoon* v. *Morgan, 38 Vt. 236:* "It is true that the trustee process is sometimes called 'attaching a debt,' because it creates a lien upon the debt as attachment does upon personal property. But the validity of the two kinds of liens rests on wholly different grounds. Attachment of personal property must be by taking possession of it. But no possession can be taken of a debt. To make the lien valid against the debt, all that is required is notice to the debtor (garnishee) of the suit, a mere summons."

In cases of seizure of tangible chattels it is also necessary that there should be a declaration in the nature of a publication of the attachment in the presence of the person having the custody of the chattels seized, and this provision has led to the, as I think, erroneous notion that the person so having the custody may be garnished, and so made in some way and to some extent personally liable as such because of his custody. But such declaration or publication in the case of a tangible chattel is not, properly speaking, a "garnishment," and as frequently as the question has arisen it has been held that no such liability can attach

to the mere custody of chattels, provided the custodian is ready and willing to yield their possession to the custody of the law.

It follows that the real and only liability of a party as garnishee is by reason of his owing a debt to the defendant in the suit, and the garnishment consists in nothing more than a "warning" to him not to pay the debt to his creditor until the plaintiff's debt is satisfied. In process of garnishment, as thus understood, the fact that the debt subject to be garnished has its *situs* out of the jurisdiction has never been held to stand in the way of the process of the court.

I come, therefore, to the conclusion that the real and only ground of jurisdiction in case of attachment, over choses in action, is the service, within the jurisdiction, of warning upon the debtor; and when that is done jurisdiction is obtained.

It is not necessary in this case to determine whether such service upon a debtor casually and for a temporary purpose within the jurisdiction is sufficient or not. For in this case, as I have concluded, the complainant had a permanent business residence in the State of Pennsylvania.

The point in this behalf made by Mr. Crandall was taken and overruled by Lord Holt two hundred years ago, as reported in *Andrews* v. *Clerke, Carth. 25*. There the garnishee pleaded to the jurisdiction that the debt due from him to the defendant, and the contract on which it was founded, arose and was made out of the jurisdiction of the sheriff of London's court, which plea was overruled, and thereupon a prohibition was moved for at the bar of the queen's bench, which was denied "because the debt always follows the person of the debtor (creditor) and it is not material where it was contracted, for it was always the custom in London to attach debts upon bills of exchange and goldsmith's notes &c., if the goldsmith who gave the note, or the person to whom the bill is directed (acceptor), liveth within the city, without any respect had to the place where the debt was contracted." The defendant in this case was, of course, a non-resident.

To the same effect is *Mallum* v. *Hern*, cited in *2 Show. *507*, decided in the king's bench in *19 Charles II.*; and see *Harrington* v. *MacMorris, 5 Taunt. 228*, and *Banks* v. *Self, 5 Taunt.*

*233.* Mr. Locke, in his treatise on *Foreign Attachments* (at *p. \*29*), says:

"It has been said that debts arising out of the jurisdiction are not attachable, and that a prohibition will lie. It is, however, the constant practice of the court to attach indiscriminately debts of this description, so that it is quite clear that with regard to simple contract debts, as they follow the person, they may be attached by serving the debtor with an attachment within the city. *And this is the course ordinarily pursued with respect to bankers and others carrying on business out of the city. If an attachment be served upon any one of the partners of a firm, while he is within the city, it is sufficient, although they carry on their business out of the city.* With respect to goods, they must be within the jurisdiction or they cannot be attached in the hands of the garnishee."

These authorities show conclusively that the fact that the *situs* of the debt attached by garnishment of the debtor is not within the jurisdiction is no bar to attachment proceedings, provided the debtor can be lawfully garnished.

The old practice in the city of London courts, as stated by Mr. Locke, agrees with that upheld by the courts of this country in the numerous cases above cited. The mere fact that the legal domicile of the garnishee is without the jurisdiction is not a protection against his garnishment. Take the case of the thousands of persons engaged in business in the great cities of New York and Philadelphia, with all their business houses there, but their legal domicile of residence in this state. With what sort of reason can it be said that none of those can be subjected to garnishment in the jurisdictions where their business is carried on, because their family homes are in another state?

A line of decided cases was cited by Mr. Crandall in opposition to these conclusions, which will now be considered. First of these is *Bowen* v. *Pope, 125 Ill. 28; 17 N. E. Rep. 64.* The suit was by a hardware company of Missouri, by foreign attachment against Bowen, a resident of Missouri, as defendant, and Pope, Lockwood and Heitz, copartners, residents of Illinois, as garnishees. The effort was to charge the garnishees on two separate matters—*first,* a debt due by them to Bowen, which was promptly admitted and paid; *second*—out of which the controversy arose—by reason that one of the firm (Lockwood), at the

moment of the service of the attachment in Illinois upon his partners, was in the State of Missouri and had in his manual possession certain promissory notes belonging to Bowen, the defendant in attachment, which, after telegraphic notice of the attachment, he delivered to Bowen on his demand. It was held that the garnishees were not liable on account of such possession and delivery. And I venture to say that it is difficult to imagine what argument having even plausibility could have been made against this result. Promissory notes are not capable of seizure and levy, and the only mode of reaching the debt which they prove is by garnishment of the makers, and not of the mere custodian of the paper script. Be that as it may, the case has no application here, because the facts are different.

The other cases were decided in New York. The first is *Plimpton* v. *Bigelow, 29 Hun 362; 93 N. Y. 592.* The plaintiffs, residents of Massachusetts, instituted attachment proceedings in New York against the defendant, a resident of Pennsylvania, as their debtor, and attempted, under a warrant of attachment—a proceeding under the New York code—to levy upon certain shares of stock owned by defendant in a corporation of Pennsylvania, incorporated under the laws of that state, which had a place of business in New York city, with a president and other officers continually present, and it was held in the supreme court that such levy was good. This judgment was reversed on appeal, on the ground that the shares of stock—the *res*—were not within the jurisdiction of the court. And this was so plain a proposition that I do not see how a question could be raised as to it. In discussing the general question, after dealing with the provisions of the New York code, the learned Chief-Judge Andrews (at *p. 601*) proceeds :

" It is not necessary to this case to define the limits of legislative power, in subjecting intangible property to attachment, by notice served upon such person or corporation as may be designated by the legislature. Manifestly the *res* cannot be within the jurisdiction, as a mere consequence of a legislative declaration, when the actual locality is undeniably elsewhere. But in respect to intangible interests, as we have said, there can be no

actual seizure of the thing, and it can be bound only by notice to some one who represents the thing. In case of a debt, notice to the debtor residing within the jurisdiction is the ordinary proceeding to attach the debt, and if the debtor is a corporation, and the corporation is a domestic one, there is no difficulty. But in some of the states, foreign corporations, having an agent or a place of business within the state, may be charged under what is called the trustee process, or as garnishee. In these proceedings the trustee or garnishee is joined with the principal defendant as a party to the action, and the debt owing by the trustee or garnishee is ascertained, and the liability of the trustee and garnishee is adjudged in the action. *There may be no diffi-culty upon principle in compelling a corporation, which has an agent and officer in another state and is transacting business there, to respond in garnishment proceedings for the debt, although the creditor—the principal defendant—is a non-resident, and if bound to respond it is certainly just that the judgment which compels the corporation to pay the debt to the plaintiff should protect it in making such payment, against a subsequent claim by its creditor.* We do not enter into this question here. But whatever view may be taken as to the right to attach a debt owing by a foreign corporation to a non-resident, by service of notice on an agent of the corporation within the jurisdiction, we think in respect to corporate stock, *which is not a debt of the corporation in any proper sense*, it would be contrary to principle to hold that it can be reached by such a notice. We are, therefore, of the opinion that the fundamental condition of attachment proceed-ings that the *res* must be within the jurisdiction of the court in order to an effectual seizure, is not answered in respect to shares in a foreign corporation by the presence here of its officers, or by the fact that the corporation has property and is transacting business here, and that section 647 must be construed as applying to domestic corporations only."

It is plain, from this extract, that the decision does not touch the question involved in our case, and the *dicta* are favorable to the jurisdiction here brought in question. It will be seen here-after that the learned judge, who thus wrote, declined in a later

case to follow his suggestions as to jurisdiction over corporations with foreign domicile of origin.

The next case is *Strauss & Terry* v. *Chicago Glycerine Co., 46 Hun 216,* where the opinion is found. The judgment was affirmed on appeal (*108 N. Y. 654*), without opinion. In that case an English fire insurance company had met with a loss by destruction by fire of property in Chicago, owned by the defendant, upon a policy negotiated and issued there. It had also an agency in New York. An attachment was issued by plaintiffs, New York creditors of the defendant, and garnishee process was served on the insurance company. A motion was made and refused, at special term, to set aside the attachment, because not efficient under the code. Upon appeal to the general term of the supreme court the · motion prevailed upon grounds thus stated by the learned judge: "It will not be necessary to determine whether a lawful attachment of the indebtedness could be made under subdivision 2 of section 649 of the code of civil procedure, without taking actual possession of the policy itself, for this policy was not issued by · the New York agency, but the negotiations for it took place in the city of Chicago, and it was there delivered to and held by the defendant. The indebtedness, accordingly, was not property which the defendant had within this state, and under the construction given to the code of civil procedure, in *Plimpton* v. *Bigelow, 93 N. Y. 592,* it could not be seized under this attachment. It is true that the service of the attachment in that case was attempted to be made upon shares of the defendant in the corporate stock of a company, but that circumstance does not seem to render the decision then made inapplicable to this case. [The judge here overlooks the declaration in the other opinion that shares of stock are in no sense a debt.] By the shares which the defendant held, he was entitled to a proportionate part of the earnings of the·corporation and of its property upon its dissolution, while in the present case the defendant was entitled, under the policy, to ˙the payment of so much money as would compensate it for the loss sustained by the destruction of its property by fire, so far as the policy covered such loss. The property itself in each case has several attributes

of similitude, rendering the decision in the case referred to applicable to the service made of the attachment in this action." After referring to decisions of other states to the contrary, he proceeds : " But it is not important to pursue the consideration of other cases, since that of *Plimpton* v. *Bigelow, supra,* maintains the general proposition that the presence of the person or thing within the state is indispensable to the power of the court to acquire jurisdiction over it in this manner."

It is here to be observed that the only part of the opinion in the previous case of *Plimpton* v. *Bigelow,* which could apply to the later one, was this expression : " In case of a debt, notice to the debtor residing within the jurisdiction is the ordinary proceeding to attach the debt." There is no warrant in that previous opinion for the notion that the relation between a corporation and its stockholders is that of debtor and creditor. But the contrary is distinctly affirmed, and the decision is put on other grounds. I feel confident that the reason for the decision in *46 Hun* is entirely fallacious, for the reason that there is, in fact, no analogy, for present purposes, between a debt due by a corporation and its obligation to its stockholders. The latter, for purposes of book-keeping, is called a debt, but no suit can be brought upon it as for a debt; and that is the test of a debt for purposes of garnishment. *Drake Att.* § *541 et seq.* Stock in a corporation cannot be levied upon by an ordinary execution against the holder, except by special statutory provision, and it would be most unjust to hold a corporation liable as garnishee upon its stock when it cannot relieve itself from liability by delivering the stock over to the sheriff or other officer serving the writ.

The next case is *Douglass* v. *Phœnix Insurance Co., 138 N. Y. 209.* In that case the insurance company, defendant, had its legal domicile in New York, and owed to Douglass, the plaintiff, also a resident of New York, a debt arising out of a loss by fire occurring in New York. The insurance company also did business in Massachusetts, and had there the same sort of domicile, for the purpose of suit, that complainant herein had in Pennsylvania. This debt was attached by a creditor of Douglass,

residing out of New York, by foreign attachment served in Massa-chusetts on the duly authorized agent of the company (at *p. 217*), and this Massachusetts proceeding was pleaded to an action after-wards brought by Douglass against the company in New York, and was held by the courts of that state to be no defence.

The case varies in its facts from the present one in that the insurer (defendant debtor) had the same legal domicile (New York) with the insured (plaintiff creditor), while here it has a different domicile. The cases would be parallel if the insurance company in this case had its domicile of nativity in this state. This difference may of itself be sufficient to distinguish it and prevent its application here. However, it is undeniable that the opinion states propositions which, if sound, are well-nigh fatal to the claim of the attaching creditor in this case, and therefore merit consideration.

It was conceded in that case, for the purposes of the argument (at *p. 217*), that by the laws of Massachusetts the debt in ques-tion was properly attachable there by process of garnishment served upon the local agent of the insurance company, and that judgment might go therein against it, with the result that the insurers might be compelled to make double payment. Of this the learned Chief-Judge Andrews (at *p. 221*) says : " We deem it unnecessary to consider the position of the defendant. If it may be subjected to embarrassment, or even to a double judg-ment, it will be in consequence of its own act in voluntarily subjecting itself to the laws of Massachusetts. The power of the court to grant a continuance in a proper case will generally afford a remedy to a party so situated." Here I understand the court to refer to the probability that the Massachusetts court will not proceed with its judgment in attachment against the garnishee upon being properly informed that the New York court has pro-ceeded to judgment against him in New York. Now it is to be observed that the complainant in this case has tried that experi-ment. It has set up in defence to garnishment in the Datz attachment suit in Pennsylvania the suit brought by Chambers in this state, and the Pennsylvania court has refused to recognize it, on the palpable ground that the Philadelphia attachment,

being prior in time, was best in right, and worked a transfer of the credit from Chambers to the plaintiff in attachment. And it is difficult to see why it was not quite as much the duty of the New York court, in the *Douglass Case*, to grant the continuance as it was that of the Massachusetts court. At least, the propriety of that course by the New York court has the sanction of the authority of Chief-Justice Kent and his associates in the leading case of *Embree* v. *Hanna, supra.*

And I further suggest that the fact that a party owing a debt may be subjected to the injury of being compelled to pay it twice—once directly to his creditor, and then again to a third person for the benefit of his creditor, and so, in effect, indirectly to his creditor a second time—has always been treated by courts desiring to do justice as a matter of serious consideration, and, in fact, the one thing to be guarded against. *Drake Att.* 699.

The learned chief-judge (at *p. 219*) proceeds: "No state can subject either real or personal property out of the jurisdiction to its laws. * * * It is a fundamental rule that in attachment proceedings the *res* must be within the jurisdiction of the court issuing the process, in order to confer jurisdiction. In the case of movables, their seizure under the attachment shows that their actual *situs* is within the jurisdiction. But in respect to intangible interests, debts, choses in action, bonds, notes, accounts, interests in corporate stocks and things of a similar nature, the question whether the *res* is within the jurisdiction of the sovereignty where the process is issued, is not so readily determined. *The general rule is well settled that the situs of debts and obligations is at the domicile of the creditor.* But the attachment laws of our own and of other states recognize the right of a creditor of a non-resident to attach a debt owing or due to him by a person within the jurisdiction where the attachment issues, and to this extent the principle has been sanctioned, *that the laws of a state, for the purposes of attachment proceedings, may fix the situs of a debt at the domicile of the debtor.*"

Now, here I venture to suggest that the learned judge here concedes the whole question, because, as I have before observed, if the *situs* of the debt is at the domicile of the creditor, then it

never can come under the jurisdiction of a foreign attachment against him, because he is always in such case out of the jurisdiction of the court issuing the attachment. To admit that jurisdiction may be exercised over a debt due to a non-resident is either to admit that the presence of the *res* within the jurisdiction is not necessary, or else to assert, as, in fact, the chief-judge does assert, that a state may arbitrarily change the actual *situs* of a chose in action not within its jurisdiction, and declare it to be within the jurisdiction, contrary to the fact. There is no escape from this dilemma.

The chief-judge proceeds: "But, we repeat, no court can acquire jurisdiction in attachment proceedings unless the *res* is either actually or constructively within the jurisdiction [I have already shown the fallacy of this position], and we are of opinion that the attempt to execute an attachment in Massachusetts upon the debts owing to the plaintiff by the insurance company, by serving upon the agent of the corporation there, and without having acquired jurisdiction of the plaintiff, must fail for the reason that the debtor, the insurance company, was in no just or legal sense a resident of Massachusetts and had no domicile there, and was not the agent of the plaintiff, and that in contemplation of law the company and the debt were at the time of the issuing of the attachment in the State of New York, and not in the State of Massachusetts." As a reason for this statement he adds: "If in this case the insurance company could be regarded as residing or having its domicile in Massachusetts for the purpose of attachment proceedings, it likewise has a domicile in every state where it may have appointed an agent under similar laws, and so, constructively, upon the theory upon which the Massachusetts attachment is defended, the corporation is present as debtor to the plaintiff in every state where such agency exists, and the credit is also present at the same time in each of such jurisdictions. *The admission of such a principle would give rise to most embarrassing conflicts of jurisdiction and subject creditors of domestic corporations to great prejudice.* We think the rule is that a domestic corporation at all times has its *exclusive residence and domicile in the jurisdiction of origin,* and that it cannot

be garnished in another jurisdiction for debts owing by it to home creditors, so as to make the attachment effectual against its creditor in the absence of jurisdiction acquired over the person of such creditor."

Now, with great deference, I venture to say that this argument, *ab inconvenienti,* so forcibly put, has not, in practice, the weight given to it by the learned chief-judge. A fundamental and familiar rule intervenes and prevents the inconveniences there mentioned and relied on, and that rule is that the *first* assignment of the debt, whether it be by the voluntary action of the creditor, or whether it be by operation of law, such as insolvent or bankrupt proceedings, or proceedings in foreign attachment, will take and hold the debt, and, in whatever jurisdiction that assignment is set up, the first principles of justice require that it should be recognized, and all subsequent assignments or attachments should give way to it. This fundamental rule of justice, I submit, was overlooked by the New York court.

As to the concession that, by the laws of Massachusetts, the courts of that state had jurisdiction to attach the debt there in question, the learned chief-judge makes this answer: " But it is only jurisdiction in an international sense, or according to the course of common law, and judicial proceedings which conform to, or, rather, which are not taken in disregard of the principles and rules of general jurisprudence which this state is bound to recognize, and if the laws of Massachusetts go to the extent claimed, and assume to authorize attachment proceedings to seize a credit owing to a resident of this state, when neither the debtor nor creditor are within the jurisdiction, this state is not, we think, bound to recognize them. *The law of a state cannot make a debtor a resident of that state by so declaring, contrary to the fact and the rule of general law, at least so as to bind another jurisdiction by the declaration."* To which I answer, why not the same power to make a debtor a resident of the state as to arbitrarily change the *situs* of the debt from the domicile of the creditor to that of the debtor? And yet this is precisely what was done by the New York court.

But if the proposition stated in the last-quoted sentence be

.admitted to be sound, it does not meet the case in hand, for the legislation under review not only provides that the foreign corporation shall be, *pro hac vice*, a resident of the state where it is doing business, but it provides for the solemn consent of the foreign corporation thereto, and if the foreign corporation does, in fact, consent thereto, as it has done in this case, wherein does the result infringe upon any fundamental law of justice? Why should not a corporation have, *pro hac vice*, two or more domiciles, or, rather, business residences?

It is not necessary to consider whether or not the state creating the corporation might not, by statutory limitation forming part of its corporate existence, prevent its acquiring a domicile elsewhere, since no such original limitation was present in the New York case or is present in the case now in hand; and, as before observed, the fact that these corporations do have this sort of multiple domicile is well known, and was presumably known by Douglass, the plaintiff in the New York case, when he took out his policy in the defendant company therein. What injustice, then, I repeat, was inflicted upon Mr. Douglass in having his debt applied, against his will, to the payment of a just debt due by him? And what sort of justice is that which would compel the payment by the defendant of its debt to Douglass, first, to a creditor in Massachusetts for Douglass' benefit, and, second, the payment of the same debt to Mr. Douglass in person, so that he (Douglass) would have the money in his pocket and at the same time have his debt paid? The injustice of that result was strongly set forth by Chief-Justice Kent, in *Embree* v. *Hanna, supra*. He there assumes that the court will never subject a party to the risk of paying his debt twice, and such is the universal rule pervading all the cases on this subject, and it seems to me that it did not have proper weight with the court in *Douglass* v. *Insurance Co.*

The ability of natural persons to have a domicile of actual residence in one state and a *quasi*-domicile or residence, for business purposes, in another state, has already been alluded to. Not only are there thousands of natural persons who are residents of New Jersey yet have their entire business residence and

actual presence in the cities of New York and Philadelphia, but there are hundreds of corporations organized under the laws of this state, and recognized as corporations domiciled in this state, whose places of business and business plant are in our neighboring states. Now, I think, the courts of New York, notwithstanding the decision just referred to, will hesitate before applying these doctrines to such persons and corporations.

But I return to the question above put, and I assert that there is no difficulty in holding that a corporation may have two domiciles, at least for purposes of suit. *Dic. Dom. pp. 110, 112.*

In *Carron Iron Co.* v. *Maclaren, 5 H. L. Cas. 416,* Lord St. Leonards (at *p. 449*) says : " I think that this company may properly be deemed both Scotch and English. It may, for the purposes of jurisdiction, be deemed to have two domiciles. Its business is necessarily carried on by agents, and I do not know why its domicile should be considered to be confined to the place where the goods are manufactured. The business transacted in England is very extensive. The places of business may, for the purposes of jurisdiction, properly be deemed the domicile. *The corporation cannot have the benefit of its place of business here without yielding to the persons with whom it deals a corresponding advantage.*" And, again (at *p. 459*) : " There may be two domiciles and two jurisdictions ; and in this case there are, as I conceive, two domiciles and a double sort of jurisdiction—one in Scotland and one in England—and, for the purpose of carrying on their business, one is just as much the domicile of the corporation as the other."

This language was cited with approval by Mr. Justice (afterward Lord) Blackburn, in a considered judgment, speaking for himself, Chief-Justice Cockburn and Justices Mellor and Quain, in *Newby* v. *Colt Co., L. R. 7 Q. B. 293, 295 (1871)*; and the court in that case held that the Colt company, though created by legislation of one of the United States, had a residence in England, and was liable to be sued by ordinary process there, because it had a place of business and was carrying on business there. Now, if that be so, does it not follow inevitably that it was liable to proceedings in garnishment, if any such there be,

in England, by reason of debts owing by it to a non-resident of England against whom process by foreign attachment may issue ?

And see *Haggin* v. *Comptoir d'Escompte de Paris, 23 Q. B. Div. 519.*

This capacity of a corporation to have a multiple residence for the purposes of suit has been recognized by the courts of our own state.   In *Moulton* v. *Insurance Co., 4 Zab. 222* (at *p. 233*), this language was used by Judge Elmer : " By the comity universally acknowledged in the states of this union, and acted upon by the supreme court in the case of *Bank of Augusta* v. *Earl, 13 Pet. 519,* corporations may send their officers and agents into other states, transact their business and make contracts there ; and in some instances the laws of the states prescribe the mode and the terms upon which they may do so.   *I am not prepared to say, that if they choose to avail themselves of this privilege, natural justice will be violated by subjecting their officers and agents to the service of process on behalf of the corporation they represent ; on the contrary, I think natural justice requires that they shall be subject to the action of the courts of the states whose comity they thus invoke.   For the purpose of being sued, they ought in such cases to be regarded as voluntarily placing themselves in the situation of citizens of that state.*   Any natural person who goes into another state carries along with him all his personal liabilities, and there is quite as much reason that a corporation which chooses to open an office and transact its business, or to authorize contracts to be made in another state, should be regarded as thereby voluntarily submitting itself to the action of the laws of that state, as well in reference to the mode of commencing suit against it, as to the interpretation of the contracts so made."

And in *Bank* v. *Delaware, Lackawanna and Western Railroad Co., 3 Dutch. 206,* it was held that a foreign corporation holding lands and doing business in this state by legislative permission is not liable to a foreign attachment, but can be served by ordinary process.

And in *McGregor, qui tam,* v. *Erie Railway Co., 6 Vr. 115,* it was held that the defendant should be considered a corporation of this state as well as of New York.   The learned Judge Bedle

(at *p. 118*) says : "It is true that the Erie Railway Company is a foreign corporation, yet, at the same time, it is domestic to the full extent of the powers and franchises confirmed and invested in it here in New Jersey. A corporation may have a two-fold organization, and be, so far at its relation to our state is concerned, both foreign and domestic. It may have a corporate entity in each state, yet in its general character be of a bi-fold organization. This doctrine is sustained not only upon principle but by the following cases.  *  *  *" This language applies to the case in hand.

The result of my study of the New York cases is that I find them standing well-nigh alone among the modern decided cases, several of which I have already cited. Their reasoning does not convince me that the assumption of power by the Pennsylvania court in this case was invalid when tested by the general principles of international law and natural justice.

It is admitted in this case that Chambers was largely indebted to Harding, Whitman & Company. There is no claim in the case that he did not have notice of the attachment in Pennsylvania, while the contrary is proven. Proof was made to the satisfaction of that court of the debt due from him to Harding, Whitman & Company, and they have, besides, sued in this state and obtained judgment, after personal service upon him, for the same debt. It will be no injustice to him to apply this debt of the complainant to him toward the payment of his indebtedness, *pro tanto*, to Harding, Whitman & Company. But it will be a great injustice to complainant to compel it to pay this debt twice. That consideration would lead me to decide in favor of Harding, Whitman & Company, even if I were in doubt (which I am not) as to the soundness of the rulings of the Pennsylvania courts.

I will advise a decree that the fund in court be paid to Harding, Whitman & Company, and that they recover against Mr. Crandall accordingly the costs paid out of the fund to the complainant, and also their costs herein ; and that Chambers and Crandall and all persons claiming under them be perpetually enjoined from bringing or maintaining any action upon the policy of insurance in question.